# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BOURNE CO.,

Plaintiff,

-against-

TWENTIETH CENTURY FOX FILM CORPORATION, FOX BROADCASTING COMPANY, TWENTIETH CENTURY FOX TELEVISION, INC., TWENTIETH CENTURY FOX HOME ENTERTAINMENT, INC., FUZZY DOOR PRODUCTIONS, INC., THE CARTOON NETWORK, INC., SETH MACFARLANE, and WALTER MURPHY,

Defendants.

Case No. 07 Civ. 8580 (DAB)

Deposition of JEREMIAH HORAN, pursuant to Rule 30(b)(6) Notice, held at the offices of Loeb & Loeb, 345 Park Avenue, New York, New York, on Friday, February 29, 2008, commencing at 9:57 a.m., before James W. Johnson, Registered Professional Reporter and a Notary Public of the State of New York.

Horan

knowledge.

MR. ZAVIN: And just again for clarification of the record, that letter is Bates stamped Bourne 0001 through 0002.

Q. Mr. Horan, can you explain to me why, having discovered this in March of 2007, Bourne made no claim or didn't bring this to the attention of Fox until June 21st, 2007.

A. As I said, we were researching to make sure that we in fact had not issued any licenses or had not received any kind of requests for licenses, and discussed possible actions to take directly, and we decided at that point that we would consult Mr. Levy.

Q. Prior to March 2007 had anyone communicated any complaint to Bourne with respect to this use of "When You Wish Upon A Star?"

A. No.

Q. Had any licensee or potential licensee of "When You Wish Upon A Star" communicated any complaint or brought this use to the attention of Bourne?

A. No.

Q. Had any licensee prior to March 2007

Horan

said they weren't going to license "When You Wish Upon A Star" because of the use in "Family Guy?"

A. No.

Q. Has Bourne ever granted a license to parody "When You Wish Upon A Star?"

A. No.

Q. Is that -- has anyone ever asked for a license to parody "When You Wish Upon A Star?"

A. Not to my knowledge.

Q. But it's fair to say you don't know whether the request that Fox made was to parody "When You Wish Upon A Star?"

A. I'm sorry, but I don't, I don't know that, I never saw the original request from Fox, so I don't know what it says.

Q. Right, and Bourne doesn't know what it says?

A. Right, so we can't say that, I can't say that, if, that Fox was the first one. I cannot say that.

Q. But you just don't know either way?

A. Either way, correct.

Q. Why was the decision made to make a claim against Fox with respect to this, the use by

Horan

Fox in "Family Guy?"

A. The decision was made because as a music publisher we have a right and an obligation to protect our copyrights, and we felt that this use was an invalid use, was an unlicensed use, and therefore we had a right and an obligation to make a claim.

Q. Was that the sole reason?

A. Yes.

(Horan Exhibit 3, Complaint and Jury Demand, marked for identification.)

Q. From 1999 to the present, when you were doing your second stint at Bourne --

A. Yes?

Q. -- do you know how many copyright suits Bourne commenced to protect its copyrights?

MR. FAKLER: Object on the ground it's outside the scope of the 30(b)(6) notice.

MR. ZAVIN: Objection is noted.

A. I know specifically of two that did not go to trial, that complaints were made for invalid use of Bourne copyright songs.

Q. Do you know what songs were involved?

A. Yes.

Horan

Q. Which songs were they?

A. One was "Whistle While You Work," and one was "Hi Ho." The other was "Hi Ho."

Q. Who were these claims made against?

A. "Whistle While You Work" was made against the Ying Yang Twins and their record company, the name of which I cannot remember, and the other was, the other suit was against Alfred Publishing.

Q. Were uses made of either of these songs claimed to be parodies?

A. No.

Q. Do you know what market substitution is?

A. Yes.

Q. In your view, what is market substitution?

A. In the case of in the music industry, the use of one song for another song or a similar song, substituting one song for another, for whatever use is being made.

Q. So that is it fair to say a potential licensee, you know, wants song A, but instead of using song A it uses song B?

A. That's correct.

Horan

Q. Does Bourne have evidence of "I Needed You" substituting in the market for "When You Wish Upon A Star?"

A. Well, we have the immediate evidence that we don't have a synchronization license or fee for the use on "Family Guy." Nor do we have performance income from that use, but then also, as stated in Ms. Siroka's report, we don't always, people don't tell us why they don't use a song, but these things do affect a potential user's decision to use the song.

Q. Let me clarify the question.

Does Bourne have any evidence that any potential licenser, putting Fox aside for the moment, that "Family Guy" any other potential user or licenser or purchaser of songs has chosen to purchase "I Needed You" instead of purchasing or licensing "When You Wish Upon A Star?"

A. No, we do not.

(Horan Exhibit 4, Responses to Defendant's First Request for Admissions, marked for identification.)

Q. I'm showing you a document that's been marked as Exhibit 4, which I will represent to you

Horan

is the responses to requests for admissions that we received from Bourne, and the first question is, do you recognize it?

A. Yes.

Q. You've seen it before?

A. Yes, I have.

Q. Did you participate in its preparation?

A. Yes, I did.

Q. Okay, could you tell me the basis of the denial for request for admission number 10 on page 5, and just so the record is clear, the request for admission reads, "Admit that," quote, "'I Needed You,'" end quote, "has not served as a substitute in the market for the song," the song being "When You Wish Upon A Star," and what is the basis for the denial of that request for admission?

A. Because we were not aware of any use does not necessarily mean to us that it has not been used.

Q. In your opinion, would any licenser who wants to use "When You Wish Upon A Star" think that "I Needed You" is an acceptable substitute?

MR. FAKLER: Objection to the request for an opinion, a lay opinion.

Horan

A. In my opinion, no.

Q. So could you explain to me the basis for the denial of request for admission number 11, which states, "Admit that," quote, "'I Needed You,'" end quote, "cannot serve as a substitute in the market for the song."

A. Again, I, I don't know that -- we don't, Bourne Company doesn't know that somebody, what somebody could do, so therefore we deny it. We can't say specifically that it cannot serve as a substitute in the marketplace for the song.

Q. But it's your opinion that it cannot? I think you just testified to that.

MR. FAKLER: Objection, asking for a lay opinion.

A. Again, my personal opinion is that it cannot.

Q. And then let's go to request for admission number 12, which says, "Admit that plaintiff," or Bourne, "is not aware of any instances where a consumer or other potential user or licensee of this song has purchased, used or licensed 'I Needed You' instead of the song."

What is the basis of the denial of that

Horan

request for admission?

A. Again, we are not aware of any, but we don't know, so we can't admit that, we cannot say that there is an instance or not.

Q. Mr. Horan, I suggest that you read that request for admission carefully, because I believe that it asks, admit that you are not aware of any instances of substitution, and yet you denied that, which is denying -- it implies to me that you are aware of instances of market substitution.

Can you explain to me what the basis of the denial for that request for admission was.

A. No, I cannot in that case.

Q. Do you agree with me that Bourne does, is not aware of any instance where a consumer or other potential user or licensee of the song has purchased, used or licensed "I Needed You" instead of the song?

MR. FAKLER: Objection, misstates his prior testimony.

MR. ZAVIN: I, I was asking him whether he agreed with that statement.

Q. You can answer the question.

A. Would you repeat the question.

Horan

Q. That Bourne is not aware of any instances where a consumer or any other potential user or licensee for the song has purchased, used or licensed "I Needed You" instead of the song.

A. Correct, we are not aware.

Q. Now, other than Ms. Siroka's opinion -- put that aside for the moment -- does Bourne have any evidence that the song "I Needed You" as it appears in "Family Guy" has harmed the market for "When You Wish Upon A Star?"

A. As I said, the, the fact that it was used without a license in "Family Guy" is, is -- no synch license, no performance license, has harmed our market.

Q. Putting aside any royalty you were deprived of by Fox, Fox's use, putting aside Ms. Siroka's report, do you have any evidence whatsoever that the song "I Needed You" as it appears in "Family Guy" has harmed the market for "When You Wish Upon A Star?"

A. No.

Q. When did you first contact -- and when I say "you" I mean Bourne -- first contact Ms. Siroka?



Horan

A. We contacted -- we didn't have direct contact with her. She was contacted by our attorneys.

Q. Do you know when?

A. I don't know the exact date. It was within the last month.

Q. Okay, that is actually what I wanted to know, so I'm going to show you a document that's been marked as Exhibit 3 in this proceeding, which I will represent to you is the complaint that was served against the defendants.

Do you recognize that document?

A. Yes, I do.

Q. Did you see it at the time it was drafted?

A. Yes.

Q. So is it fair to say that you saw it before it was served?

A. Yes.

Q. And the complaint is dated October 3rd, 2007; is that correct?

A. October 3rd?

Q. If you'll look at the page 11 --

A. Yes.



Horan

Q. -- does that conform with your personal knowledge that the complaint was prepared and/or served approximately on October 3rd?

A. Yes.

Q. And is that, and is -- am I correct that that is well before there was any contact made with Ms. Siroka or any report received from Ms. Siroka?

A. Yes.

Q. In that case, sir, could you tell me the basis in paragraph five for the statement that defendants -- and I'm quoting now -- quote, "Defendants' infringing activities have also caused substantial and irreparable harm to Bourne."

A. Would you repeat the question, please.

Q. Could you tell me the basis of the statement in the complaint in paragraph five where it is asserted that, quote, "Defendants' infringing activities have also caused substantial and irreparable harm to Bourne."

A. We feel that this use without a license, and with the nature of the lyrics that were used, will be harmful to Bourne for two reasons; first, that it would appear that Bourne did not protect its copyrights, in that it was, a use such as this



Horan

was made without our consent; and secondly, that, with the nature of the use of a classic like "When You Wish Upon A Star," we felt that it could harm the potential market for the use in commercials and in other films.

Q. But isn't it fair to say, I think as you previously testified, you didn't have any evidence that any such harm had occurred?

MR. FAKLER: Objection, vague as to what you mean by "evidence." You mean admissible evidence?

MR. ZAVIN: No. In the common layman's terms.

Q. Did you have any evidence in October 2007 that there has been any actual harm to the composition?

A. The evidence we have is that we have, I've got 25 years' experience in the business, the owner of the company's been in business for a long time, and if a song is used, although we cannot give you dollars-and-cents figures, how a song is used in one instance can and has affected how the song is used in future instances, and we feel that this is a case, exactly this kind of a case now.

**FILED UNDER SEAL**

# FILED UNDER SEAL

# FILED UNDER SEAL

Horan

this on the grounds that it's outside the scope of the 30(b)(6) notice.

MR. ZAVIN: Well, it isn't.

MR. FAKLER: How is it within, how is the public association of Walt Disney on this notice? Can you show it to me.

DI Q. Mr. Horan, did you ever watch in the 1950s the television program "The Wonderful World Of Disney?"

MR. FAKLER: I'm going to instruct the witness not to answer. This is way outside of anything on this list.

Q. Mr. Horan, are you following the instruction of your counsel?

A. Yes, I am.

MR. ZAVIN: I have no further questions.

MR. FAKLER: Can we take 10.

MR. ZAVIN: Sure.

MR. FAKLER: Thanks.

(Recess taken.)

MR. FAKLER: First I'd just on the record like to request that Mr. Horan have the opportunity to review and correct any final transcript of the deposition.

Horan

MR. ZAVIN: Agreed.

MR. FAKLER: And so -- thanks, and I have just a little bit of cross here, so to speak.

EXAMINATION BY MR. FAKLER:

Q. Mr. Horan, having answered a series of questions, is there anything in your testimony that you feel the need, looking back on it, to amplify or clarify?

A. Yeah, there were a couple of questions regarding market substitution and harm to the market. In a couple of instances I gave an answer of, if asked if there was any harm I said -- and I guess just an answer -- no, but in those instances I should, should have said that, brought up the loss of revenue from the "Family Guy" use that does affect Bourne Company.

And then there was also a question about the, whether or not I was aware of whether or not the, a request from Fox had come in for the use, and I said I was not aware whether or not it came in or what was, whether it was denied or how it was denied.

That should be clarified to state that

Horan

in 1998, until 2005 in fact, the only person who would have denied or handled a telephone call requesting a use would have been Beebe Bourne, who has since passed away, B-E-E-B-E Bourne, who died in 2005.

MR. FAKLER: That's all I have.

MR. ZAVIN: Okay, just very simple.

EXAMINATION BY MR. ZAVIN:

Q. I just -- I understand that Beebe Bourne died, but your answer remains correct that Bourne as a company does not have any record of the request, a request coming in or what the nature of the request was or why it was denied if it was denied; is that correct?

A. That is correct.

Q. Okay. And just with respect to your first clarification, is it, does the rest of your answer remain the same, that you, other than the loss of whatever revenue that they might have expected to receive by Fox from the use, Bourne has no evidence of market harm or market substitution?

A. That is correct.

MR. ZAVIN: Okay, I have no further questions, except I reserve the right to

Horan

reopen this should the court move favorably, that the witness was improperly instructed not to answer certain questions or certain lines of questions.

(Time noted: 11:45 a.m.)

_______________________

JEREMIAH HORAN

Sworn and subscribed to before me this ____ day of _____________ 2008.

_______________________

NOTARY PUBLIC

Horan

this on the grounds that it's outside the scope of the 30(b)(6) notice.

MR. ZAVIN: Well, it isn't.

MR. FAKLER: How is it within, how is the public association of Walt Disney on this notice? Can you show it to me.

DI Q. Mr. Horan, did you ever watch in the 1950s the television program "The Wonderful World Of Disney?"

MR. FAKLER: I'm going to instruct the witness not to answer. This is way outside of anything on this list.

Q. Mr. Horan, are you following the instruction of your counsel?

A. Yes, I am.

MR. ZAVIN: I have no further questions.

MR. FAKLER: Can we take 10.

MR. ZAVIN: Sure.

MR. FAKLER: Thanks.

(Recess taken.)

MR. FAKLER: First I'd just on the record like to request that Mr. Horan have the opportunity to review and correct any final transcript of the deposition.

Horan

MR. ZAVIN: Agreed.

MR. FAKLER: And so -- thanks, and I have just a little bit of cross here, so to speak.

EXAMINATION BY MR. FAKLER:

Q. Mr. Horan, having answered a series of questions, is there anything in your testimony that you feel the need, looking back on it, to amplify or clarify?

A. Yeah, there were a couple of questions regarding market substitution and harm to the market. In a couple of instances I gave an answer of, if asked if there was any harm I said -- and I guess just an answer -- no, but in those instances I should, should have said that, brought up the loss of revenue from the "Family Guy" use that does affect Bourne Company.

And then there was also a question about the, whether or not I was aware of whether or not the, a request from Fox had come in for the use, and I said I was not aware whether or not it came in or what was, whether it was denied or how it was denied.

That should be clarified to state that

Horan

in 1998, until 2005 in fact, the only person who would have denied or handled a telephone call requesting a use would have been Beebe Bourne, who has since passed away, B-E-E-B-E Bourne, who died in 2005.

MR. FAKLER: That's all I have.

MR. ZAVIN: Okay, just very simple.

EXAMINATION BY MR. ZAVIN:

Q. I just -- I understand that Beebe Bourne died, but your answer remains correct that Bourne as a company does not have any record of the request, a request coming in or what the nature of the request was or why it was denied if it was denied; is that correct?

A. That is correct.

Q. Okay. And just with respect to your first clarification, is it, does the rest of your answer remain the same, that you, other than the loss of whatever revenue that they might have expected to receive by Fox from the use, Bourne has no evidence of market harm or market substitution?

A. That is correct.

MR. ZAVIN: Okay, I have no further questions, except I reserve the right to

Horan

reopen this should the court move favorably, that the witness was improperly instructed not to answer certain questions or certain lines of questions.

(Time noted: 11:45 a.m.)

_______________________
JEREMIAH HORAN

Sworn and subscribed to before me this ____ day of ______________ 2008.

_______________________
NOTARY PUBLIC