Jonathan Zavin (JZ-1846)
Jacques Rimokh (JR-0745)
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154-1895
(212) 407-4000

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

BOURNE CO.,                                     :

           Plaintiff,                          :

    -against-                                   :
                                                            07 Civ. 8580 (DAB)

TWENTIETH CENTURY FOX FILM                      :
CORPORATION, FOX BROADCASTING                      **REPLY DECLARATION OF LAWRENCE**
COMPANY, TWENTIETH CENTURY FOX  :                  **FERRARA, Ph.D. IN FURTHER**
TELEVISION, INC., TWENTIETH                        **SUPPORT OF DEFENDANTS' MOTION**
CENTURY FOX HOME                                :  **FOR SUMMARY JUDGMENT**
ENTERTAINMENT, INC., FUZZY DOOR
PRODUCTIONS, INC., THE CARTOON                  :
NETWORK, INC., SETH MCFARLANE,
WALTER MURPHY,                                  :

           Defendants.                         :

------------------------------------------------------------X

       I, LAWRENCE FERRARA, hereby declare as follows:

**Introduction**

       1.    This declaration is submitted in support of Defendants opposing Plaintiff's Motion for Summary Judgment in this proceeding. I was originally asked to render a musicological opinion by Defendants' counsel as to whether the musical composition embodied in a song from the *Family Guy* TV series episode entitled "When You Wish Upon A Weinstein" (hereafter *Family Guy song*) is a musical parody of the musical composition embodied in the

sound recording of "When You Wish Upon A Star" which is part of the 1940 motion picture *Pinocchio* (hereafter *Pinocchio song*). In my report dated February 26, 2008 (the "Ferrara Report"), I provided findings regarding my comparative musicological analysis of *Family Guy song* and *Pinocchio song*. I also compared *Pinocchio song* with the Deposit Copy of "When You Wish Upon A Star" which is in the form of published sheet music. I assessed similarities *and* differences, individually and in the aggregate, first to determine how much of the music in *Family Guy song* is similar to *Pinocchio song* and secondly, whether or not and to what extent the music that is different in *Family Guy song* is transformative and builds upon the music in *Pinocchio song* to create new, original expression.

2.      On the basis of my musicological analysis, it is my opinion that *Family Guy song* is a musical parody of *Pinocchio song*. *Family Guy song* incorporates a sufficient portion of the musical composition from *Pinocchio song* to conjure up an image of *Pinocchio song*. However, there is no wholesale copying of *Pinocchio song* in *Family Guy song*. In comparison to *Pinocchio song*, the musical composition in *Family Guy song* is substantially transformed into new musical expression, that pokes fun at *Pinocchio song*.

3.      I hold the title of Professor of Music and Director of Music and Performing Arts in the Steinhardt School at New York University. In addition to numerous articles published in peer-reviewed scholarly journals, I have authored a major book on music analysis and methodology, co-authored a standard text on keyboard harmony and improvisation, and co-authored what is considered a classic text in research methodologies in music (the Fifth Edition was released in 2005). At NYU, I have been a member of the full-time faculty since 1979: from 1985 through 1995 I was the head of Ph.D. studies in music, from 1995 through 2006 I was

Department Chair, and since 2006 I have been Director of all music and performing arts areas in the Steinhardt School.

4. While Ms. Wilbur purports to give a magical analysis of the works in issue, she has not completed any degree in music theory and analysis, and she has not published in any peer-reviewed venue in any area of music scholarship. Her terminal degree is a master's in ethnomusicology, a field of study she described in her testimony as follows:

Q "What is "ethnomusicology?" (53:19)

A "The study of music in culture, to put it into a context, so that it gives the study of music, how it works in culture, how it is handled in different cultures. So it's a little bit of sociology, a little bit of psychology, and a little bit of anthropology in connection with music." (53:20 – 54:2)

**The Musical Compositions At Issue Are *Pinocchio song* and *Family Guy song***

5. Plaintiff claims that I analyzed the wrong works, i.e. that I compared a transcription of the recorded song "I Need A Jew," with Plaintiffs song, rather than using an earlier lead sheet or incomplete orchestra score of I Need A Jew. However, an ordinary lay listener will compare the musical compositions at issue by listening to them, not by reading a musical score. Further, the song that plaintiffs claim infringes was the song performed on the television show, not the one on the lead sheet. There are other differences in a song as written, and as performed, therefore, in keeping with musicological practices and in order to provide the most objective and accurate analysis of the musical compositions at issue, I prepared transcriptions of the musical compositions embodied in *Pinocchio song* and *Family Guy song* as they are heard in their respective film and television show. On the other hand, Ms. Sandy Wilbur copied and largely relied upon the published sheet music of "When You Wish Upon A Star" (Exhibit D in her report dated February 24, 2008, hereafter the "Wilbur Report") and an incomplete musical score prepared by Walter Murphy (hereafter *Family Guy score*, see Exhibit

3

G in the "Wilbur Report"). Consequently, Ms. Wilbur's transcriptions and analyses are both dislocated from and do not accurately represent what an ordinary lay listener actually hears in *Family Guy song* and *Pinocchio song*, and do not accurately represent the song plaintiff claims infringes.

**The Score To *Family Guy song* Is Incomplete And Often Inaccurate**

6. The *Family Guy score* does not wholly or accurately represent the musical composition in *Family Guy song*. The *Family Guy score* does not include the "coda" (i.e., closing) section ("Now my troubles are all through. I have a Jew.") which is included in *Family Guy song*. Moreover, the notes played in the important piano part are not written in the *Family Guy score* during approximately 65% of the musical composition. Specifically, the piano part is not written during the entirety of the portions in which the Peter Griffin character is singing which represents the entirety of the music Ms. Wilbur placed in issue in the "Wilbur Report." Ms. Wilbur conceded that the notes to the piano part are not written in the *Family Guy score* in her deposition testimony: "How the piano player plays those chords, whether in chords or broken arpeggios or in other ways is left open [in the *Family Guy score*]." (Wilbur deposition 88:12-14) In many instances, the harmonies that are created by the freely playing pianist in *Family Guy song* are different from the harmonies that are written in the *Family Guy score*. That is the reason why the harmonies I transcribed are sometimes different from the harmonies marked in the *Family Guy score*.

7. By relying on the score and not *Family Guy song*, Ms. Wilbur failed to transcribe and analyze the actual harmonies that are created in *Family Guy song*. Moreover, the vocal melody in the *Family Guy score* is inaccurate in at least two melody notes as compared with *Family Guy song*. In addition, the melodic rhythms are different in many of the notes in *Family Guy song* and the *Family Guy score*.

8.  In his deposition testimony, Walter Murphy expresses doubt regarding the accuracy of the melodic rhythm in his *Family Guy score* with respect to the vocal part at issue as follows:

> Q   "Is this an accurate notation [Plaintiff's Exhibit 2 *Family Guy score*] of the song as you wrote it?" (15:09 – 15:11)
>
> A   "...I would have to actually listen to a recording to see if any of the rhythm or the notes were changed by Seth['s] vocal...I can't honestly tell you this is notated perfectly as to the way he actually sung it." (15:13 – 16:08)
>
> In the "Wilbur Declaration," Ms. Wilbur misrepresents Mr. Murphy's testimony cited immediately above: "Mr. Murphy has confirmed that the Score [*Family Guy score*] **accurately** represents "Jew" [*Family Guy song*] as performed in the Episode. (Murphy Tr. 14:19 – 18:23)." [emphasis added]

9.  The *Family Guy score* that Ms. Wilbur relied on is not a "final" or wholly accurate representation of the musical composition embodied in *Family Guy song* because it (1) does not include the "coda" section, (2) does not include the specific melodic and harmonic notes that are actually played by the pianist, (3) lists harmonies that are contradicted by the harmonies that are actually played by the pianist, (4) has at least two melody notes that are not sung, and (5) includes many inaccurate melodic rhythms. Thus, Ms. Wilbur's transcription of *Family Guy song* not only relies on an incomplete and often inaccurate score, she failed to create and utilize a transcription of the musical composition that is embodied in *Family Guy song*. Ms. Wilbur has not opined on what an ordinary lay listener would hear, or the actual songs in issue.

**Musicologists Rarely "Communicate With" Composers Of Works They Are Analyzing**

10. Plaintiffs counsel writes: "...amazingly, he [Ferrara] never once communicated with Murphy in the course of performing his musicological analysis." (Plaintiff's combined memorandum in support of its motion for Summary Judgment..., page 29 and also see page 13 therein) First, it is telling that Plaintiff's counsel does not fault his musicologist, Ms. Wilbur, who did not "communicate with" Mr. Murphy, or conclude that her analysis was flawed. In fact,

musicologists rarely communicate with composers of the works they are analyzing. The music at issue is objectively available for analysis. Oddly, using Plaintiff's counsel approach, I would also be faulted for not "communicating with" Leigh Harlin (1907 – 1969) who composed the music in "When You Wish Upon A Star."

**Musicologists Analyze Similarities And Differences Within The Context Of The Entire Musical Composition**

11. In comparing two musical compositions, musicologists analyze similarities *and* differences within the context of the entirety of the musical compositions. I reference this standard musicological methodology in paragraphs 1 and 5 in the "Ferrara Report." Ms. Wilbur's methodology omits the analysis of *differences* between *Family Guy song* and *Pinocchio song* and fails to analyze the similarities and differences within the context of the musical compositions in their entirety. Consequently, she is unable to opine as to the transformative changes in *Family Guy song* which are demarcated in the differences and understood within the context of the entire musical compositions at issue.

12. In the opening sentences of the "Wilbur Report" Ms. Wilbur writes that she "has been asked" to render an opinion "as to (a) the similarity of the two songs" and whether 'I Need a Jew' could have been written in a manner that would take less material from 'When You Wish Upon a Star'..." (page 1) Thus, she followed the directive of Plaintiff's counsel (to identify "similarities") but not the protocols of musicological methodology which analyze similarities and differences within the context of the entirety of the musical compositions.

13. In her testimony, Ms. Wilbur states that she did not consider portions of *Family Guy song* that are "different" because her "... methodology is to look at those things that are similar, and identify those things, and then see to what degree they are similar, and that is what I did." (Wilbur Dep. 106:23 – 107:02) This slanted analytical methodology results in the

omission of the "interlude" section in *Family Guy song* from Ms. Wilbur's analysis because "It's developing in a different way [from *Pinocchio song*]..." (Wilbur Dep. 105:16)

**There Are Significant Transformative Changes In The Structure of *Family Guy song* As Compared With *Pinocchio song***

14. Structural transformation in *Family Guy song* is evidenced by the creation of two, new substantial sections of music that are absent in *Pinocchio song*: the "interlude" and the "coda" sections. (Ms. Wilbur refers to the "coda" section as the "reprise" section.) These two, new sections of music in *Family Guy song* constitute a total of 19 bars of music. *Family Guy song*, as transcribed by Ms. Wilbur, is 34 bars. Thus, the "Wilbur Report" failed to identify and analyze approximately 35% of the entirety of the musical composition embodied in *Family Guy song*. Ms. Wilbur partially recanted this omission in her deposition and in the "Wilbur Declaration": "As I state in my deposition, I should have added this reprise to my analysis" (Wilbur Dec. ¶ 5; Wilbur Dep. 116:12 – 117:13) However, she maintains that her omission of the "interlude" is correct because it is purportedly "a separate piece, as confirmed by the composer." (Wilbur Dep. 5:15, 28:91) However: (1) the listener of *Family Guy song* hears the musical composition as a through-composed single composition which includes the "interlude" and (2) Ms. Wilbur and Plaintiff's counsel misrepresent Mr. Murphy's testimony on this issue.

15. The composer of the music in *Family Guy song*, Walter Murphy, testified that he recorded the "song," (i.e., the entire *Family Guy song*) "...in four pieces for recording convenience." (Murphy Dep. 23:2 – 23:03) First, Mr. Murphy's reference to "pieces" is analogous to dividing an apple into four pieces. Each piece is still part of the whole apple or, in the instant issue, the musical composition. Second, at 23:02 – 23:03, Mr. Murphy explains that he divided the entire "song" into four "pieces" to facilitate the recording process; he did not state that they are four different musical compositions. Third, Mr. Murphy explained that this division

of the entire *Family Guy song* into four "pieces" is necessary because the sections or pieces of *Family Guy song* that have a vocal part generate a different royalty "rate of payment from BMI" than those that do not include a vocal part. (Murphy, 23:23 – 24:19)

16. It is obvious in reviewing the "TV Music Cue Sheet" (marked Plaintiff's Exhibit 4) that Mr. Murphy has divided *Family Guy song* into the following four "pieces":

   a. The opening vocal part starting with the lyrics, "Nothing else has worked so far" and ending with "To teach me how to whine and do my taxes";
   b. The "interlude";
   c. The return of the Chorus vocal part starting with the lyrics "Though by many they're abhorred" and ending with "I need a Jew"; and
   d. The "coda" or "reprise" section which includes the lyrics.

17. Ms. Wilbur chose to analyze two "pieces" of *Family Guy song* (letters "a" and "c" above) and omit two "pieces" of *Family Guy song* (letters "b" and "d"). Ms. Wilbur has cherry picked the "pieces" of *Family Guy song* for analysis, which contradicts musicology and common sense.

**There Are Significant Transformative Changes In The Harmony in *Family Guy song* As Compared With *Pinocchio song***

18. As analyzed in the "Ferrara Report" and in my deposition testimony, there are significant transformative changes in the harmony in *Family Guy song* as compared with *Pinocchio song*. Ms. Wilbur attempts to abrogate three centuries of standard harmonic analysis and understanding in music theory by suggesting that chords containing some of the same pitches *function* the same way. *In fact, every three-note chord shares two of its three pitches with other chords and every four-note chord shares three of its four pitches with other chords.* Using Ms. Wilbur's musicologically baseless methodology, the *function* of individual chords would not be distinguishable. Three centuries of music theory consistently maintains that chords are defined by their (1) *quality* (major, minor, diminished, or augmented) and (2) *function* (based on the scale degree on which it is built). For example, in a classic music theory text, Greg A.

8

Steinke writes: "Chords built on the various scale degrees differ not only in quality, but also possess different functions resulting from their position in the scale." (*Harmonic Materials in Tonal Music*, Part I, Ninth Edition, p. 23, 2002, Prentice Hall)

19. In Ms. Wilbur's analysis, (1) "major" chords that share two notes with "minor" or "diminished" chords have the same *quality* and (2) chords that are built on different scale degrees but that share two or three notes with other chords have the same *function*. Her analysis countervails three centuries of musicological understanding of harmony. Even without music theory knowledge, a non-music reader will readily see in Exhibit I in the "Wilbur Report" that the harmonies that she transcribes (as letters above each line of music) have many more differences than similarities: minor chords are qualitatively different from major, diminished and augmented chords and chords identified with different letters are built on different scale degrees and therefore are functionally different.

20. In addition, Ms. Wilbur failed to analyze the "interlude" section and thereby missed additional and substantial transformative harmonic changes in *Family Guy song* and *Pinocchio song*.

**There Are Significant Transformative Changes In The Melodic Rhythm in *Family Guy song* As Compared With *Pinocchio song***

21. The melodic rhythm in the "interlude" in *Family Guy song* is vastly different from the melodic rhythm in *Pinocchio song*. *Arguendo*, if we accept the "Wilbur Report" omission of the "interlude" and "coda" sections in *Family Guy song* (a total of 19 bars of music), approximately 36% of the correlative melodic rhythms are the same while 64% of the correlative melodic rhythms are different in *Family Guy song* and *Pinocchio song*. Considering the entire *Family Guy song* musical composition (which has 157 melodic notes), approximately 22% of the

9

correlative melodic rhythms in *Family Guy song* are the same as in *Pinocchio song* while 78% of the melodic rhythms in *Family Guy song* are not the same as in *Pinocchio song*.

22. There are more similarities in the melodic rhythm between the Deposit Copy sheet music of "When You Wish Upon A Star" and *Family Guy song* than there are between *Family Guy song* and *Pinocchio song*; out of 157 melodic notes in *Family Guy song*, 68 have the same melodic rhythm as the Deposit Copy sheet music. However, approximately 64% of the melodic rhythms in *Family Guy song* and the Deposit Copy sheet music are different.

23. Furthermore, as I testified in deposition, ".... there is no distinctive melodic rhythm in *Pinocchio song*." As noted in the "Ferrara Report," "recognition of a melody is far more reliant on the sequences of *pitches* than it is on melodic *rhythms*." (Ferrara 8-9, paragraph 19 and Ferrara Dep. 96:04 – 96:11). Ms. Wilbur agreed with this widely held musicological view as per her deposition testimony:

Q   "... in your opinion, which is the more distinctive part of the melody, the melodic rhythm or the sequence of pitches?" (135:1 – 135:20)

A   "The sequences of pitches for that question." (135:21 – 135:22)

**There Are Significant Transformative Changes In The Sequences of Melodic Pitches in *Family Guy song* As Compared With *Pinocchio song***

24. There are numerous analytical methods used by musicologists to compare melodies. In forensic musicology, a driving criterion for selecting a method to compare melodies is objectivity. Thus, when correlative pitches and sequences of pitches are identical, there is an objective measure for reporting that similarity.

25. The notes in all of the millions of melodies ascend, descend, or repeat the same pitch; these are the only (three) basic melodic contours. Thus, if two melodies simply ascend, they share a generic similarity with millions of other melodies.

26.     As discussed in Chapters 2, 6, 7, 8, and 9 in my book *Philosophy and the Analysis of Music*, the move away from objective measures in musical methodologies to subjective approaches is a slippery slope. Ms. Wilbur's methodology lands at the bottom of the slope by finding that melodies that share the same generic melodic contour (e.g., two melodies that ascend) is a significant similarity (e.g., see Wilbur Dec. 9-10:32). Even more amazingly, she finds that melodies that have *opposite* melodic contours and that share no correlative pitches are *similar* (e.g., see Wilbur Dec. 8:27 and 23:80). I am not aware of any musicological methodology that would support Ms. Wilbur's finding of *"similarity"* between three melody notes in bar 2 in *Family Guy song* (which represent the transformed send half of the hook from *Pinocchio song*) that (1) have an opposite melodic contour and (2) do not share one correlative pitch in common with the three melody notes in bar 2 in *Pinocchio song*. Plaintiff's counsel repeats this analytical nonsense: "While Jew alters those [three] notes slightly, Jews notes are in harmony with those in Star…" (Plaintiff's combined memorandum page 27) which is without musicological support and defies common sense.

27.     Moreover, the seven note hook in *Pinocchio song* is never heard in *Family Guy song* in its entirety; only the first four notes are in *Family Guy song*. Furthermore, each iteration of the four notes from the seven-note hook in *Pinocchio song* is followed by substantial transformative change in the remainder of the seven-note melodic phrase; the remaining three notes have opposite melodic contours and do not even share one correlative pitch). These substantial changes in the seven-note hook result in new musical expression in *Family Guy song*.

28.     Overall, the melodic pitches in the "interlude" in *Family Guy song* are vastly different from the melodic pitches in *Pinocchio song*. Moreover, the melodic pitches in the vocal parts in *Family Guy song* and *Pinocchio song* evidence far more differences than

similarities. *Arguendo,* if one accepts Ms. Wilbur's omission of the "interlude" and "coda" sections in *Family Guy song,* approximately 25% of the correlative melodic pitches are the same while approximately 75% of the correlative melodic pitches in *Family Guy song* and *Pinocchio song* are different. That finding supports an opinion that there is substantial transformation of the melodic pitches. Following proper musicological methodology by considering the entire *Family Guy song* musical composition (which has 157 melodic notes), approximately 15% of the melodic pitches in *Family Guy song* are the same as the correlative melodic pitches in *Pinocchio song* and approximately 85% have different melodic pitches. This finding supports an opinion that there is massive transformation of the sequences of melodic pitches in *Family Guy song* as compared with *Pinocchio song.*

**The Lyrics In *Family Guy song* and *Pinocchio song* Are Substantially And Obviously Different**

29.    I analyzed the lyrics in preparation of the "Ferrara Report." However, as per footnote 1 on page 1 therein, I noted that I was not asked to opine on the lyrics in that report. In asking me to omit my lyrical analysis, Defendants' counsel explained that the Court on its own would be able to judge the similarities and differences of the lyrics, and that this did not need to be dissected by a musicologist. During my deposition, Plaintiff's counsel asked me to summarize my analysis of the lyrics. I responded as follows:

> "I found that the only verbatim similarity in the lyrics is in the "wish upon a star" phrase, and noted that it is in a different place...outside of that similarity, and certainly the fact that there are similar setting[s] of syllables to various notes quantitatively, that the qualitative impact of the vast lyrical changes [and] differences in The Family Guy song represented very new expression, and from the standpoint of parody, as a musicologist, that it took what was in the original a very pure idea about how one might "wish upon a star," and turned it into an extraordinarily vulgar approach about how the Peter Griffin character was wishing for a Jew. And in that sense I concluded that the lyrics, by themselves, are a parody, and indeed overall, in terms of their semantic meaning, [are] very, very different as compared with the lyrics in Pinocchio song." (Ferrara deposition, 10:18 - 11:16)

**Errors In The "Wilbur Report" Conceded In Her Deposition Testimony**

30. On page 5, item 10 in the "Wilbur Report" she opines: "The basic chord that begins and ends each four-measure section is the same." However, in her deposition she concedes:

| | | |
|---|---|---|
| Q | 94:20 to 95:03 | ("...those are different chords.") |
| A | 95:13-15 | ("And I would say that the next four-measure section, I am [also] incorrect. The F and the A minor are different...") |

31. On page 8, paragraph i, Ms. Wilbur writes: "The first three notes of the B Section of "When You Wish Upon a Star" are **d e g** while the first three notes of "I Need a Jew" are **e d g**" and concludes that this is a "significant similarity." In her testimony she concedes that there is no similarity:

| | | |
|---|---|---|
| A | 127:20 – 127:21 | ("I would like to strike that whole sentence, actually.") |

32. Ms. Wilbur incorrectly transcribed many melodic rhythms in *Family Guy song*. During her deposition, she was asked to tap the basic pulse while listening to the sound recording of *Family Guy song*, following along with her transcription thereof. Subsequent to that exercise, she conceded three errors in melodic rhythm in her transcriptions errors:

| | | |
|---|---|---|
| A | 99:8-10 and 99:22 | ("Obviously, I made a mistake in bar nine where these should be eighth notes and that should be a rest...That is incorrect") |
| A | 101:21 – 101:22 | ("That should be a dotted quarter [note rhythm] on [the lyric] "Stein".") |
| A | 101:22 – 101:23 | ("...and [that should be] an eighth note on [the lyric] "or.") |

33. In addition to errors in her transcription of *Family Guy song*, Ms. Wilbur incorrectly transcribed melodic rhythms in *Pinocchio song*. Subsequent to a tapping exercise she conceded three errors in melodic rhythms in her transcription:

13

A    100:18 – 100:24("...in measure 20, the first two notes [in] "those who love" actually should be...two eighth notes and then you should put a dot [which adds another beat] to the next [third] note [which is set to the third lyric, "love"].)

34.    Ms. Wilbur conceded a transcription error in one of the melodic pitches in *Pinocchio song*:

A    100:10 – 100:11 ("in measure 28, [the lyric] "through," should be an E [pitch] instead of a C [pitch].)

35.    As discussed above, Ms. Wilbur failed to transcribe and analyze the "coda" section. During her deposition (111:24 – 111:25) and in the "Wilbur Declaration" (05:15) she recanted her omission of the "coda" in her analysis.

36.    Ms. Wilbur's recanting and acceptance that the "coda" is part of *Family Guy song* caused her to change her quantitative analysis of the purported identical number of (95) notes in *Family Guy song* and *Pinocchio song*. (Wilbur Dep. 113:2 – 113:14) and her quantitative analysis of the purported "nearly identical" duration of the musical compositions in *Family Guy song* and *Pinocchio song*. (116:12 - 117:13)

37.    Ms. Wilbur concedes the structural similarity she found between *Family Guy song* and *Pinocchio song* is commonplace:

Q    "Is that a common musical structure in music?" (126:8-9)

A    "Very common." (126:10)

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 3rd day of June, 2008.

LAWRENCE FERRARA

NY723412.1
202894-10011