Jonathan Zavin (JZ-1846)
Jacques Rimokh (JR-0745)
Shelly Elimelekh (SE-0597)
LOEB & LOEB LLP
345 Park Avenue
New York, New York 10154-1895
(212) 407-4000

Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
BOURNE CO.,                                             :

             Plaintiff,                   :

       -against-                              :

TWENTIETH CENTURY FOX FILM            :
CORPORATION, FOX BROADCASTING
COMPANY, TWENTIETH CENTURY FOX        :
TELEVISION, INC., TWENTIETH
CENTURY FOX HOME                      :
ENTERTAINMENT, INC., FUZZY DOOR
PRODUCTIONS, INC., THE CARTOON        :
NETWORK, INC., SETH MCFARLANE,
WALTER MURPHY,                        :

          Defendants.                         :

------------------------------------------------------- X

      07 Civ. 8580 (DAB)

      **DEFENDANTS' LOCAL RULE 56.1
COUNTERSTATEMENT OF DISPUTED
FACTS**

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the

Southern District of New York, defendants Twentieth Century Fox Film Corporation ("Fox

Film"), including its unit, Twentieth Century Fox Television ("Fox Television") incorrectly

named herein as Twentieth Century Fox Television, Inc., Fox Broadcasting Company ("Fox

Broadcasting") and Twentieth Century Fox Home Entertainment LLC ("Fox Home

Entertainment"), formerly known as Twentieth Century Fox Home Entertainment, Inc. (referred

to herein collectively as the "Fox Defendants" or "Fox"), Fuzzy Door Productions, Inc. ("Fuzzy

Door"), The Cartoon Network, Inc. ("Cartoon Network"), Seth MacFarlane ("MacFarlane"), and Walter Murphy ("Murphy") (referred to collectively as "Defendants"), by their attorneys, Loeb & Loeb LLP, respectfully submit the following Counterstatement to Plaintiff's "Local Rule 56.1 Statement of Undisputed Facts and Counterstatement of Disputed Facts" dated May 23, 2008 in further support of their motion for summary judgment and in opposition to Plaintiff's motion for summary judgment. The facts are undisputed for purposes of this motion only or disputed.

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 1:

"When You Wish Upon a Star" ("Star"), written by Leigh Harline and Ned Washington, is one of the most famous songs of all time. The song was originally written for the classic Walt Disney film, "Pinocchio" in which it was sung by Cliff Edwards as the voice of the character Jiminy Cricket. (Berrocal Decl. ¶ 3; Soroka Decl. ¶ 30; Horan Decl. ¶ 11).

## DEFENDANTS' RESPONSE:

Undisputed.

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 2:

Plaintiff Bourne was founded in 1919 and is one of the world's largest international music publishing companies. (Berrocal Decl. ¶ 2).

## DEFENDANTS' RESPONSE:

Undisputed.

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 3:

Bourne owns the copyright registrations for the unpublished version of Star, the published version of Star, as included in the film "Pinocchio," the published sheet music for Star and may [sic] other arrangements of the song. (Berrocal Decl. ¶¶ 5-10).

## DEFENDANTS' RESPONSE:

Undisputed.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 4**:

Since then Star has become a standard. The beautiful and heartfelt lyrics are known the world over, epitomizing the wonders of childhood and the powers of love, hope and belief. Over 100 performing artists and orchestras --from Rosemary Clooney to N Sync --have recorded Star in order to share its message of wholesome hopefulness and reward with their fans. (Berrocal Decl. ¶¶ 11-13; Soroka Decl. ¶¶ 31-33; Horan Decl. ¶ 11; Fakler Decl. Ex. E (Ferrara Tr. 61:3-5)).

**DEFENDANTS' RESPONSE**:

Undisputed.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 5**:

The American Film Institute, in recognition of songs that have "captured the nation's heart, echoed beyond the walls of a movie theater, and ultimately stand in our collective memory," ranked Star seventh in its list of the top one hundred movie songs of all time. Star is recognized worldwide as a classic and a cultural treasure. (Berrocal Decl. ¶ 12; Soroka Decl. ¶ 30).

**DEFENDANTS' RESPONSE**:

Undisputed.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 6**:

Star has also been used extensively in commercials, television and film. (Berrocal Decl. ¶ 13; Horan Decl. ¶ 11).

**DEFENDANTS' RESPONSE**:

Undisputed.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 7**:

Defendants Seth MacFarlane ("MacFarlane"), Fuzzy Door Productions, Inc. ("Fuzzy Door"), Twentieth Century Fox Film Corporation ("Fox Film") and Defendant Twentieth Century Fox Television ("Fox Television") (a unit of Defendant Fox Broadcasting Company ("Fox Broadcasting")) (hereinafter "Fox") create and produce an animated television series called "The Family Guy" or "Family Guy" (hereinafter "Family Guy") including an Episode entitled "When You Wish Upon a Weinstein" (hereinafter the "Episode"). (Answer ¶¶ 23-24; Fakler Decl. Ex. D (MacFarlane Tr. 9:8-10:11)); MacFarlane Decl. ¶ 1).

**DEFENDANTS' RESPONSE**:

Undisputed.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 8**:

Defendant The Cartoon Network, Inc. ("Cartoon Network") first aired the Episode as part of its late-night Adult-Swim programming in November 2003 and has telecast the Episode no less than 36 times. (Fakler Decl. Ex. I (Tingle-Heppner Tr. 14:12-23); Fakler Decl. Ex. G (Lazzo Tr. 10:22-11:2)).

**DEFENDANTS' RESPONSE**:

Undisputed.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 9**:

Defendant Walter Murphy ("Murphy") is a composer of television film scores for Family Guy and wrote the music for a song entitled "I Need a Jew" (hereinafter "Jew") that appears in the Episode. (Fakler Decl. Ex. A (Murphy Tr. 7:3-12, 8:2-9, 9:19-23. 11:10-19)).

**DEFENDANTS' RESPONSE**:

Defendants do not dispute that Walter Murphy ("Murphy") is a composer of television film scores for Family Guy. Defendant disputes that Murphy wrote the music for a song entitled "I Need a Jew" (the "Family Guy Song"). Murphy wrote a portion of the music for the Family Guy Song. (Murphy Dep. 12:20 – 12:21, 13:02 – 13:08) ("Seth sang another version of it, and changed a few notes here and there . . . he changed a few notes at the beginning of each verse . . . Q. So Seth wrote that part of the final melody as opposed to you? A. Yes").

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 10**:

Fox requested a license from Bourne to use Star to create Jew but Bourne denied the request. (Fakler Decl. Ex. F (Cavanaugh Tr. 6:2-7:3, 7:7-8:13, 9:7-13); Fakler Decl. Ex. D (MacFarlane Tr. 47:10-47:16, 70:10-17)); Fakler Decl. Ex. K, L. M (Murphy, MacFarlane and Fox Response to Pl. Request For Admission Nos. 5 and 6)).

**DEFENDANTS' RESPONSE**:

Undisputed.

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 11:

As originally written Jew was musically identical to Star just with different lyrics. (Fakler Decl. Ex. D (MacFarlane Tr. 48:21-49:3)), Fakler Decl. Ex. M (MacFarlane Response to Pl. Request for Admission Nos. 1-2)).

## DEFENDANTS' RESPONSE:

Disputed.  As originally written the Family Guy Song was not musically identical to "When You Wish Upon a Star" ("Wish Upon A Star") just with different lyrics, rather the lyrics were written to the tune of Wish Upon A Star and Murphy wrote a tune to fit the lyrics that he was given.  (MacFarlane Dep. 48:21-49:03) ("Q.  So those lyrics were written to essentially the actual tune of 'When You Wish Upon a Star' as far as the structure of the lyrics?  A.  Yes.") (Murphy Dep. 10:08 – 10:15, 11:22 – 12:06) ("I was sent a copy of the script and I read through it, and when I came to the page that had the song lyrics, the parody lyrics, I used that and sat down and wrote a tune to fit those lyrics . . . Q. . .did anybody from 'Family Guy' ever discuss with you using the exact music from 'When You Wish Upon A Star'?  A. No.").

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 12:

After Bourne denied his license request for Star, MacFarlane and co-producer David Zuckerman ("Zuckerman") asked Murphy to write music similar to Star to go with the lyrics that had already been written. (Fakler Decl. Ex. D (MacFarlane Tr. 49:4-18)).

## DEFENDANTS' RESPONSE:

Disputed.    After clearance for Wish Upon A Star was denied, Seth MacFarlane ("MacFarlane") and David Zuckerman ("Zuckerman") did not ask Murphy to write music similar to Wish Upon A Star, they asked him to write something that evoked Wish Upon A Star.

(MacFarlane Dep. 49:04 – 49:18) ("[w]e decided that we still wanted to do the parody and so we decided to proceed but with a different melody that evoked the original . . . the instructions were to do something that was not 'When You Wish Upon a Star' but would evoke that song.").

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 13:

With Star in mind, Murphy wrote a version of Jew and made a recording of himself on piano with MacFarlane singing the vocal; this version of Jew is reflected in Murphy's Leadsheet. (Fakler Decl. Ex. A (Murphy Tr. 10:12-11:9; 13:9-19; 18:24-20:13)), Pl. Ex. 3 (Leadsheet) Fakler Decl. Ex. K (Murphy's Responses to Pl. Request for Admission Nos. 3-4)).

## DEFENDANTS' RESPONSE:

Undisputed.

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 14:

Although MacFarlane initially approved the Leadsheet version, either MacFarlane or Zuckerman told Murphy to write another version of the melody to make it sound even closer to Star. (Fakler Decl. Ex. A (Murphy Tr. 11:20-12:12)).

## DEFENDANTS' RESPONSE:

Disputed.   MacFarlane did not initially approve the Leadsheet version and neither MacFarlane nor Zuckerman told Murphy to write another version of the melody to make it sound even closer to Wish Upon A Star.  (Murphy Dep. 11:20 – 12:23) ("he liked it . . . either Seth or his partner David Zuckerman, mentioned to me that they would like the melody to be even closer to the Disney song . . . and later on, Seth sang another version of it, and changed a few notes here and there to make – to make the average person realize that this was going to be a parody.").

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 15:

Murphy voiced his concern about taking even more from Star to MacFarlane because his agreement with Fox states that he is to provide unique music. (Fakler Decl. Ex. A (Murphy Tr. 12:16-19)).

**DEFENDANTS' RESPONSE**:

Disputed.  Murphy did not voice his concern about taking "even more" from Wish Upon A Star and there is no testimony or evidence that he did so.  Rather, Murphy did not want to use any portion of Wish Upon A Star.  Defendants do not dispute that Murphy has an agreement with Fox to provide unique music.  (Murphy Dep. 12:17 –12:19) ("I had to be careful because I have an agreement with Fox that I provide unique music, and so I didn't want to use any portion of the Disney song.").

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 16**:

MacFarlane sang the changes he wanted made to Jew and insisted Murphy make them. (Fakler Decl. Ex. A (Murphy Tr. 12:19-13:8)).

**DEFENDANTS' RESPONSE**:

Disputed.  MacFarlane did not insist that Murphy make changes to the Family Guy Song and there is no testimony or evidence that he did so.  Rather, MacFarlane sang another version of the song and changed a few notes himself.  (Murphy Dep. 12:20 –13:08) ("later on, Seth sang another version of it, and changed a few notes here and there to make – to make the average person realize that this was going to be a parody . . . he changed a few notes at the beginning of each verse . . . Q. So Seth wrote that part of the final melody as opposed to you?  A. Yes.").

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 17**:

This second version of Jew -- which is reflected in the Score -- is the one that was performed in the Episode and it is more similar to Star than is the Leadsheet version. (Murphy 14:19-18:23; Pl. Ex. 2 (Score); Fakler Decl. Ex. K (Murphy's Responses to Plaintiff's Requests to Admit Nos. 45, 46)).

**DEFENDANTS' RESPONSE**:

Defendant disputes that the version of the Family Guy Song that was performed in the Episode is reflected in the score because the melody is not reflected in the score. (Murphy Dep. 15:09 – 16:08) ("The melody, I would have to actually listen to a recording to see if any of the rhythm or the notes were changed by Seth'[s] vocal . . . Well, any singer performing a song generally tries to make it his or her own by changing inflections or length of notes or even actually changing notes. I don't – I haven't heard a recording of the song in quite a while. So I can't honestly tell you this is notated perfectly as to the way he actually sings it. "). Defendants do not dispute that the version of the Family Guy Song that was performed in the Episode is more evocative of Wish Upon A Star than the version in the Leadsheet.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 18**:

Although the Leadsheet is significantly less similar to Star than the version of Jew ultimately used in the Episode, it was sufficient to evoke Star for the purpose of the intended "parody." (Fakler Decl. Ex. A (Murphy Tr. 13:20-14:9)); Wilbur Decl. ¶ 54).

**DEFENDANTS' RESPONSE**:

Defendants dispute that the Leadsheet version of the Family Guy Song was sufficient to evoke Wish Upon A Star for the purpose of the intended parody. There is no testimony or evidence that the Leadsheet version of the Family Guy Song was sufficient to evoke Wish Upon A Star for the purpose of the intended parody. (Murphy Dep. 13:20 – 14:09) ("Q. And was it your intent to even in your first version evoke 'When You Wish Upon A Star'? A. My first intention was to try and write something sweet and Disney-esque, without – without actually utilizing any material from 'Wish Upon a Star' to try and convey the joke in the script. Q. And what joke was that? A. That it was a parody of a scene from a Disney movie, and the sweet melody coupled with the ridiculous lyrics and the absurd imagery on the screen would be funny.

Q. And in your view, your first version of that accomplished that goal. A. Yes, I think my first version evoked the feeling of a Disney song."). Defendants do not dispute that the Leadsheet version of the Family Guy Song is significantly less similar to Wish Upon A Star than the version ultimately used in the Episode.

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 19:

The final version of Jew incorporates musical elements from Star, which make Jew sound similar to Star. (MacFarlane, Murphy and Fox Requests for Admission Nos. 8 and 9).

### DEFENDANTS' RESPONSE:

Disputed. The version of the Family Guy Song performed in the Episode incorporates limited musical elements from Wish Upon A Star for parodic purposes.

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 20:

Jew was created in a manner intended to "evoke" Star. (Fakler Decl. Ex. K, L, M (MacFarlane, Murphy and Fox Requests for Admission No. 10)).

### DEFENDANTS' RESPONSE:

Undisputed.

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 21:

MacFarlane conceived the idea for the Episode when he realized that every time he made a significant purchase, he asked a Jewish friend to come with him to negotiate on his behalf. (Fakler Decl. Ex. D (MacFarlane Tr. 14:19-15:8)).

### DEFENDANTS' RESPONSE:

Undisputed.

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 22:

The Episode's theme is that Peter Griffin, the Family Guy lead character, holds various bigoted ideas and stereotypes, such as that Jews are good with money, whine, and are responsible

for killing Jesus Christ. By the Episode's end he learns that his bigotry was wrong. (MacFarlane Decl. ¶ 7; Fakler Decl. Ex. A (Murphy Tr. 18:24-19:17); Pl. Ex. 3; Fakler Decl. Ex. D (MacFarlane Tr. 53:3-55:7); Fakler Decl. Ex. B (Blitt Tr. 17:18-18:2)).

**DEFENDANTS' RESPONSE**:

Disputed.  The Episode's theme is that Peter Griffin's beliefs based upon racial stereotypes, even "positive" ones, are ridiculous and that no group of people is any better or worse than another because of their race or cultural heritage.  Just one of the comedic values present is that although this an obvious concept, it was not obvious to Peter.  In the end, Peter had to learn this ridiculously obvious lesson and the Episode illustrates Peter's ignorance. (MacFarlane Dec. ¶ 7).

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 23**:

Jew is the centerpiece of the Episode and its lyrics are as follows:

Nothing else has worked so far,
So I'll wish upon a star,
Wondrous dancing speck of light,
I need a Jew.

Lo is [sic] makes me take the rap,
cause our check-book looks like crap,
Since I can't give her a slap,
I need a Jew.

Where to fine [sic] a Baum or Steen or Stein
to teach me how to whine and do my taxes?

Though by many they're abhorred,
Hebrew people I've adored.
Even though they killed my Lord,
I need a Jew. (PL. Exs. 2-3; MacFarlane Decl. Ex. A (Episode DVD))

**DEFENDANTS' RESPONSE**:

Disputed.  There is no testimony or evidence that the Family Guy Song is the centerpiece of the Episode and in fact Defendants do not consider it so.  The lyrics to the Family Guy Song are as follows:

Nothing else has worked so far,
So I'll wish upon a star,
Wondrous dancing speck of light,
I need a Jew.

Lois makes me take the rap,
cause our check-book looks like crap,
Since I can't give her a slap,
I need a Jew.

Where to find a Baum or Steen or Stein
to teach me how to whine and do my taxes?

Though by many they're abhorred,
Hebrew people I've adored.
Even though they killed my Lord (Alt. Vers. I don't think they killed my Lord),
I need a Jew. (MacFarlane Dec. Ex. A (Episode DVD))

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 24:

Jew was intended to hold bigotry up to ridicule, in particular Peter's tendency to be ignorant and biased about people different than he. Making fun of Peter and his beliefs is often the theme of Family Guy episodes. (Fakler Decl. Ex. D (MacFarlane Tr. 51:3-11, 53:3-18; 54:13-55:7)).

**DEFENDANTS' RESPONSE**:

Disputed.  One of the several purposes of the Family Guy Song was to hold bigotry and people like Peter Griffin up to ridicule. (MacFarlane Dep. 51:03 – 51:14, 53:03 – 53:18, 54:13 – 55:07) ("The song makes fun of a number of things.  I mean it – our version makes fun of the very saccharin, sweet tone of the original song.  It's certainly one of the most overtly sweet, wholesome songs ever written and we were making fun of that.  We were – aside from that, you know, satirizing, you know, bigotry and people like Peter Griffin, but we had also discussed at

some point in the room the – that the song would be making, you know – also serves as kind of a way to poke fun at Walt Disney's reputation as an anti-Semite."). Defendants do not dispute that making fun of Peter and his beliefs is often the theme of Family Guy episodes.

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 25:

The point of Jew is to illustrate Peter's ignorance. (Fakler Decl. Ex. J (Zuckerman Tr. 25:19-26:2)).

## DEFENDANTS' RESPONSE:

Disputed.  One of the several points of the Family Guy Song was to illustrate Peter Griffin's ignorance.  (Zuckerman Dep. 22:13 – 22:23, 25:19 – 26:07) ("our argument was that it had to be that song because it's the iconic Disney wish song and it's about – it evokes a child wishing for something sweet and innocent and pure.  And we thought juxtaposing that with what Peter was wishing for, which was stupid and ignorant and not innocent and pure, and was making a satirical point, and we were also – we also were aware of Disney's reputation as an anti-Semite and we thought that using the song for Peter to wish for a magical Jew who could come into his life and solve all his problems was – you know, was making a sharp point about Disney . . . The song was an illustration of how dumb he is . . . It was a comment on the Disney song.").

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 26:

Ricky Blitt ("Blitt"), the writer of the Episode, said Jew was intended to be a joke about bigotry experienced in the context of the Episode. (Fakler Decl. Ex. B (Blitt Tr. 15:11-16:16, 17:18-18:2, 21:22-22:21)).

## DEFENDANTS' RESPONSE:

Disputed.  Even though Ricky Blitt ("Blitt") was credited as the writer of the Episode, the Episode was actually written by the entire writing staff in the "writers room." (MacFarlane Dep.

15:24 – 16:15) ("Q. Now, is it fair to say that after a certain time this story concept got expanded and changed? A. Yes. Q. And who was involved in that process who participated in that process. A. The whole writing staff."). Further, Blitt had no involvement in writing either the lyrics or music to the Family Guy Song. (MacFarlane Dep. 49:25 – 50:14) ("Q. [W]ho was involved in writing the lyrics? A. It was done by a group of writers . . . Q. Ricky Blitt's name is attributed to the lyrics. Do you know was he involved in writing the lyrics? A. I don't believe he was, no."); (Blitt. Dep. 15:08 – 15:15, 18:17 – 18:18) ("the way it works is when you finish a script you hand it in. As I told them before, my expertise wasn't the song. So I was going to leave that bare and let them do it, but other than that, what you do is you hand it in and then all the writers gather together and punch it up and to improve jokes and to do things . . .By the way, that's the one part of the episode that I didn't write . . ."). Blitt did not testify that the Family Guy Song is "intended to be a joke about bigotry experienced in the context of the Episode." Blitt testified that he could not be sure about what the song parodies because he was not in the room writing the song, but believes that it speaks to the ignorance of Peter's view and what makes it funny is that it was used in the context of the most innocent, pure, sweet and saccharin kind of song. (Blitt Dep. 19:06 – 21: 20) ("That's why the song was so important for us – in the body of the most innocent, pure, sweet and saccharin kind of song . . . We got the comedic value of it. . . Keep in mind for me it would almost be conjecture because I wasn't in the room writing the song . . .").

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 27:

When asked if Jew makes fun of Star, Blitt stated as follows:

It's just weird because you can describe it in different ways. It's not like -- there's a type of parody that is done when you are mercilessly trying to mock. What you are doing here, it's more like you are using it in kind of a wink to evoke the other things that you are mocking with, you know, his ignorant views sung in that song.

It's like -- you know, it's not intended to skewer the song and just say we think it's a bad song and we're making fun of it. It's the perfect song because it's of another era and it's a song about wishing, and usually you are working for world peace or the world to be perfect, and this guy is wishing for a Jew who is good with money to come into his life. So it's like that's the juxtaposition that makes it funny, and, you know, it's just sort of like a direct through line that when you are parodying something, you just need to put it in the perfect body or else it won't work, and that was the perfect body for us was the song. (Fakler Decl. Ex. B (Blitt Tr. 20:6-25)).

## DEFENDANTS' RESPONSE:

Undisputed.

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 28:

Jew was meant to use the sweetness and wholesomeness of Star to contrast with Peter's racist and ignorant views about Jewish people to emphasize how wrong those views are. (Fakler Decl. Ex. B (Blitt Tr. 15:19-16:16)).

## DEFENDANTS' RESPONSE:

Disputed. The Family Guy Song was meant to do several things, including make fun of the very saccharin, sweet tone of Wish Upon A Star, as well as to hold bigotry and people like Peter Griffin up to ridicule. (MacFarlane Dep. 51:03 – 51:14, 53:03 – 53:18, 54:13 – 55:07) ("The song makes fun of a number of things. I mean it – our version makes fun of the very saccharin, sweet tone of the original song. It's certainly one of the most overtly sweet, wholesome songs ever written and we were making fun of that. We were – aside from that, you know, satirizing, you know, bigotry and people like Peter Griffin, but we had also discussed at some point in the room the – that the song would be making, you know – also serves as kind of a way to poke fun at Walt Disney's reputation as an anti-Semite."). While Blitt had no involvement in writing either the lyrics or music to the Family Guy Song and could not be sure about the purpose of the song, he believed that the writers thought it would be funny to have the ignorant views put into the body of the most pure and innocent song representing another era.

(Blitt. Dep. 16:01 – 16:06) ("If we're going to do something as silly as somebody thinking that it's -- having some racist views or ignorant views on Jewish people, that it might be funny to put that in the body of the most pure and innocent and sweet and almost saccharin song representing another era.").

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 29:

The viewpoint expressed in Jew's lyrics is being held up to ridicule, not the viewpoint of Star. (Fakler Decl. Ex. B (Blitt Tr. 10:24-12:4, 17:7-18:2, 19:14-20:19, 22:10-22:21); Fakler Decl. Ex. A (Murphy Tr. 30:10-32:16); Fakler Decl. Ex. J (Zuckerman Tr. 24:22-25:17, 26:3-13)).

## DEFENDANTS' RESPONSE:

Disputed.  There is no testimony or evidence that the Family Guy Song was intended to ridicule either the viewpoint expressed in its lyrics or the viewpoint of Wish Upon A Star, rather the Family Guy Song was a parody of Wish Upon A Star and was intended to make fun of several things, including Wish Upon A Star, Peter's bigoted views and Disney's reputed anti-Semitism.  (MacFarlane Dep. 51:03 – 51:14, 53:03 – 53:18, 54:13 – 55:07) ("The song makes fun of a number of things.  I mean it – our version makes fun of the very saccharin, sweet tone of the original song.  It's certainly one of the most overtly sweet, wholesome songs ever written and we were making fun of that.  We were – aside from that, you know, satirizing, you know, bigotry and people like Peter Griffin, but we had also discussed at some point in the room the – that the song would be making, you know – also serves as kind of a way to poke fun at Walt Disney's reputation as an anti-Semite."); (Blitt Dep. 10:24 – 12:04, 17:07 – 18:02, 19:14 – 20:19) ("somebody had talked about how it would fun to parody, you know, like the 'When You Wish Upon A Star' just to get at the total innocence of it with this ridiculous, out-there kind of lyrics that we would put in that body . . . why not go after the song that's almost iconic for the

innocence of another era . . ."); (Zuckerman 19:09 – 20:10, 22:08 – 22:23, 24:07 – 26:12) ("I mean I don't think we were trying to ridicule anybody . . . I think we were just pointing out that they were ignorant . . . the song was an illustration of how dumb he is.  Q.  Was the song an illustration – any kind of negative comment on the original Disney song? . . . A. I mean I don't understand the word negative.  It was a comment on the Disney song . . . Well, I don't think the word negative applies.").

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 30:

The Episode has been distributed on DVD with an accompanying commentary track in which MacFarlane, Blitt and others discuss the Episode, including all of its so-called "pop-culture" references. Nowhere in their discussions does anyone state that Jew was intended to comment on or parody Star. (Fakler Decl. Ex. K, L, M (MacFarlane, Murphy and Fox Responses to Requests for Admissions Nos. 12, 13 and 14); MacFarlane Decl. Ex. A Episode Commentary).

## DEFENDANTS' RESPONSE:

Undisputed, except that MacFarlane, Blitt and others discuss the Episode, including, some, not all, of its "pop-culture" references.

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 31:

There are no parodic musical devices in "Jew." (Wilbur Dec. ¶ 95).

## DEFENDANTS' RESPONSE:

Disputed. (Ferrara Dec. ¶ 2, Exhibit B, ¶¶ 28, 29) ("There are numerous bars of music in *Family Guy song* which represent the implementation of musical devices that poke fun at *Pinocchio song.*  For example, the melodic contour in the second bar of six 2-bar phrases (sometimes beginning at the end of the first bar) throughout the respective Sections A and Section A1 is turned upside-down in *Family Guy song* as compared with the melodic contour in the second bar of the correlative 2-bar phrases in *Pinocchio song.*  Another recurring musical

device in *Family Guy song* that pokes fun at *Pinocchio song* takes aim at one of the most memorable portions of the melody in *Pinocchio song*. This portion of the melody is heard three times in *Pinocchio song* in bars 5-6, 13-15, and 44-45. This portion of the melody consists of eight descending notes. Thus, the melodic contour of this memorable portion of the melody is wholly descending. By way of humorous transformation, the basic melodic contour in the correlative bars in *Family Guy song* is *ascending* and in addition, the eight correlative notes in *Family Guy song* include inner melodic contours that move up and down.").

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 32:

Murphy, the composer of Jew was unable to identify any specific parodic musical devices in his own composition. (Fakler Decl. Ex. A (Murphy Tr. 30:10-32:16)).

## DEFENDANTS' RESPONSE:

Disputed. The composition to which Murphy was testifying was the earlier version of the Family Guy Song and not the one performed in the Episode and analyzed by Professor Ferrara. Moreover, Murphy merely states that he believes that the entire song parodies Wish Upon A Star. (Murphy Dep. 30:10 – 31:16) ("I think I would have to answer the whole song . . . I would say parodies 'When You Wish Upon A Star'.").

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 33:

When asked to list everything Jew is making fun of, Blitt, the writer of the Episode, did not mention Walt Disney. (Fakler Decl. Ex. B (Blitt Tr. 20:1-21:20)).

## DEFENDANTS' RESPONSE:

Disputed. Even though Blitt was credited as the writer of the Episode, the Episode was actually written by the entire writing staff in the "writers room." (MacFarlane Dep. 15:24 – 16:15) ("Q. Now, is it fair to say that after a certain time this story concept got expanded and

changed? A. Yes. Q. And who was involved in that process who participated in that process. A. The whole writing staff."). Further, Blitt had no involvement in writing either the lyrics or music to the Family Guy Song. (MacFarlane Dep. 49:25 – 50:14) ("Q. [W]ho was involved in writing the lyrics? A. It was done by a group of writers . . . Q. Ricky Blitt's name is attributed to the lyrics. Do you know was he involved in writing the lyrics? A. I don't believe he was, no."); (Blitt. Dep. 15:08 – 15:15, 18:17 – 18:18) ("the way it works is when you finish a script you hand it in. As I told them before, my expertise wasn't the song. So I was going to leave that bare and let them do it, but other than that, what you do is you hand it in and then all the writers gather together and punch it up and to improve jokes and to do things . . . By the way, that's the one part of the episode that I didn't write. . . ."). It is undisputed that Blitt did not mention Walt Disney, when asked to list what the Family Guy was making fun of, but he did testify that he could not be sure about what the song parodies because he was not in the room writing the song. (Blitt Dep. 19:06 – 21: 20) ("That's why the song was so important for us – in the body of the most innocent, pure, sweet and saccharin kind of song . . . We got the comedic value of it. . . Keep in mind for me it would almost be conjecture because I wasn't in the room writing the song . . ."). In fact, Blitt would not have known that the Family Guy Song was meant to make a point about Walt Disney, because as MacFarlane testified, that point was discussed in the writers room and, as Blitt testified, he was not there when the song was written. (MacFarlane Dep. 62:15 – 63:12) ("I mean at some point during or after the song was written, it was discussed in the writers room that this is – you know, this is kind of an ironic subtext that hopefully enriches the parody.").

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 34:

The notion of Jew making fun of Walt Disney's alleged anti-Semitism was not considered, if at all, until after the song was written and was considered an additional, unintended joke. (Fakler Decl. Ex. J (Zuckerman Tr. 24:7-21); Fakler Decl. Ex. D (MacFarlane Tr. 62:22-63:18)).

## DEFENDANTS' RESPONSE:

Disputed.  There is no testimony or evidence that the notion of the Family Guy Song making fun of Walt Disney's alleged anti-Semitism was considered an additional, unintended joke.  In fact, one of the intentions of the Family Guy Song was to make a sharp point about Walt Disney's alleged anti-Semitism and that was discussed in the writers room around the time that the song was written, but before the recording of the song.  (MacFarlane Dep. 51:12 – 51:14; 62:15 – 63:12) ("we had also discussed at some point in the room the – that the song would be making, you know – also serves as kind of a way to poke fun at Walt Disney's reputation as an anti-Semite . . . I mean at some point during or after the song was written, it was discussed in the writers room that this is – you know, this is kind of an ironic subtext that hopefully enriches the parody . . . It was during or after.  I don't know, I can't give you a specific answer."); (Zuckerman Dep. 24:07 – 24:21) ("Q. [T]hese discussions about Walt Disney and his alleged anti-Semitism that you just discussed, when were those discussions? . . . A. it would have to be after the table read before the record – before the record of the song.").

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 35:

In order to perceive a joke in Jew about Walt Disney, the viewers must associate Star with Walt Disney the person not the Disney Company [sic] and they must be aware of the rumors that was [sic] an anti-Semite. (Fakler Decl. Ex. D (MacFarlane Tr. 57:24-59:13, 61:19-22)).

**DEFENDANTS' RESPONSE**:

Undisputed, except the company is called the "Walt Disney Company," not the Disney Company.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 36**:

Walt Disney's alleged reputation as an anti-Semite is not explicitly referenced anywhere in "Jew." (Fakler Decl. Ex. D (MacFarlane Tr. 60:19-61:19)).

**DEFENDANTS' RESPONSE**:

Undisputed.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 37**:

The Disney Company is not reputed to be anti-Semitic. (Fakler Decl. Ex. D (MacFarlane Tr. 59:14-60:5)).

**DEFENDANTS' RESPONSE**:

Disputed to the extent that Walt Disney is associated with the Walt Disney Company. (MacFarlane Dep. 57:24 – 60:19) ("[L]ots of animators call it 'Mousewitz' . . . [w]ell with regard to the Disney Corporation, I mean the man was the company in so many ways. I mean his name is on everything, his signature is on everything, Walt Disney. If you want to point to one of the most visible heads of a company – I mean he was the company. I mean the Disney Corporation has his name on it.").

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 38**:

The Fox Defendants have no basis for their allegation that Walt Disney was publicly known as an anti-Semite. (Fakler Decl. Ex. H (Siegel-Shattuck Tr. 12:19-23)).

**DEFENDANTS' RESPONSE**:

Disputed.  Defendants produced and submitted as evidence substantial commentary about Walt Disney's public reputation as being anti-Semitic.  (Rimokh Dec. ¶¶ 3-5).  In fact, it is undisputed that Walt Disney is a reputed anti-Semite as Plaintiff has admitted that "Walt Disney has been characterized in public as an anti-Semite."  (Pltf's Adm. No. 7).  Plaintiff's citation to the deposition testimony of Lianne Seigel-Shattuck is misleading, as she merely states that she does not know about the Fox Defendants' basis for the position that Walt Disney is publicly perceived as having been an anti-Semite, not that there is no basis.  (Siegel-Shattuck Dep. 12:19 – 12:23) ("I don't know what the basis for that would be.").

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 39**:

Fox had "extreme anxiety" about the Episode offending the Jewish community and the approval process conducted by its "Standards and Practices" Department was more difficult than usual for the show. (Fakler Decl. Ex. D (MacFarlane Tr. 24:5-19, 25:12-18)).

**DEFENDANTS' RESPONSE**:

Undisputed.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 40**:

The Episode went through numerous script changes, and was vetted by two rabbis, both of whom found Jew offensive.  In fact, Linda Shima-Tsuno, Fox's Director of Standards and Practices during the creation of the Episode, testified that everyone who reviewed the song had a problem with it. (Fakler Decl. Ex. C (Shima-Tsuno Tr. 13:21-16:13)).

**DEFENDANTS' RESPONSE**:

Defendants do not dispute that the Episode went through numerous script changes and that it was vetted by two rabbis.  Defendants dispute that both rabbis found the Family Guy Song offensive.  Linda Shima-Tsuno ("Shima-Tsuno") testified that one rabbi was not offended by the episode, but she believed that he thought the song might offend some people.  (Shima-Tsuno

Dep. 15:24 – 16:05) ("He was not offended by the episode, but I do believe that he thought the song might offend some people."). The second rabbi did not like the entire episode, which includes the Family Guy Song. (Shima-Tsuno 17:20 – 18:01) ("She didn't like it at all"). Plaintiff mischaracterizes Shima-Tsuno's deposition testimony. She never states that "everyone who reviewed the song had a problem with it." Rather, she stated that she believes that everyone thought that the song might offend some people. (Shima-Tsuno Dep. 13:21 – 16:13) ("I do believe that he thought the song might offend some people. I think everyone thought that . . . I believe everyone mentioned the song, so I am assuming he did too.").

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 41:

Ms. Shima-Tsuno testified that throughout the review and revision process nobody from the Family Guy staff explained that the song was meant to ridicule Walt Disney's supposed anti-Semitism. (Fakler Decl. Ex. C (Shima-Tsuno Tr. 19:6-9)).

## DEFENDANTS' RESPONSE:

Disputed. Shima-Tsuno testified that she does not recall whether anyone told her that the Family Guy Song was specifically meant to make fun of the alleged anti-Semitism of Walt Disney. (Shima-Tsuno 19:06 – 19:09) ("Q. Did anyone at 'Family Guy' ever tell you that 'I Need a Jew' song was specifically meant to make fun of the alleged anti-Semitism of Walt Disney? A. I don't recall that."). In fact, she would have no reason to know because as MacFarlane testified, this point was never discussed with the Fox Defendants. (MacFarlane Dep. 56:16 – 57:20) ("They – they wouldn't have been involved with – their concern was not whether the song – you know, the issues relating to the song itself. Their issues were content. And that – no, that was not a – I don't remember, but that's not a conversation that would have come up with them.").

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 42:**

The only justification MacFarlane gave to Ms. Shima-Tsuno for the problematic content of the Episode was that the show was a satire holding bigotry and anti-Semitism up to ridicule. (Fakler Decl. Ex. D (MacFarlane Tr. 26:24-27:9)).

**DEFENDANTS' RESPONSE:**

Disputed.  MacFarlane testified that he does not recall specifically what justifications were given for the problematic content of the Episode and only recalls generally that they explained that the Episode was a spoof on certain less enlightened cultural views.  (MacFarlane Dep. 26:24 – 27:09) ("I don't recall specifically, only generally . . . that it's satire, it's – you know, a spoof on certain less enlightened cultural views.").

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 43:**

Neither MacFarlane, nor Blitt nor any anyone else on the DVD Episode commentary track says that Jew was meant to comment on or ridicule Walt Disney or the Disney Company. In fact, Disney is never mentioned at all. (Fakler Decl. Ex. K, L, M (MacFarlane, Murphy and Fox Responses to Requests for Admission Nos. 15 and 16); MacFarlane Decl. Ex. A Episode Commentary).

**DEFENDANTS' RESPONSE:**

Undisputed, except the company is called the "Walt Disney Company," not the Disney Company.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 44:**

Songwriters and their publishers earn income by licensing their songs. There are several ways income is generated through licensing.  One important income stream comes from Synchronization Licenses (or "synch" licenses).  Synch licenses are especially important once the song becomes famous and widely associated with a particular theme, as Star has become with wholesomeness and sweetness. (Soroka Decl. ¶¶ 9-10, 12; Horan Decl. ¶ 12).

**DEFENDANTS' RESPONSE**:

Undisputed, except that Plaintiff provides no basis for its statement that "synch licenses are especially important once the song becomes famous and widely associated with a particular theme."

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 45**:

Often, copyright owners will reject license requests because the context of the use is not up to their standards or values in some way and would, therefore, diminish the value of the song either monetarily or in the eyes of their fans. (Soroka Decl. ¶¶ 21-28).

**DEFENDANTS' RESPONSE**:

Disputed. This is not a fact, but merely an opinion by a purported expert. Moreover, Plaintiff provides no basis for Soroka's opinion.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 46**:

Almost all music publishing and recording contracts provide some sort of approval over the use of their songs or recordings in so-called x-rated films or political advertisements, which is an indication that both sides acknowledge how detrimental to the value of the songs these types of uses can be if they conflict with the values of the writer or recording artist, and may offend the audience. (Soroka Decl. ¶ 29).

**DEFENDANTS' RESPONSE**:

Disputed. This is not a fact, but merely an opinion by a purported expert. Moreover, Plaintiff provides no basis for Soroka's opinion.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 47**:

Jew is highly controversial and would be viewed as offensive and jolting by a broad cross-section of the viewing and listening public. (Soroka Decl. ¶ 32).

**DEFENDANTS' RESPONSE**:

Disputed.  The Family Guy Song is not controversial and has, in fact, not been viewed as offensive by a broad cross-section of the viewing and listening public.  Indeed, the song was first aired almost five years ago and in all that time Plaintiff has not received a single complaint about the Family Guy Song.  (Bourne Dep. 22:16 – 22:24) ("Q.  Prior to March 2007 had anyone communicated any complaint to Bourne with respect to this use of "When You Wish Upon A Star?"  A.  No.  Q.  Had any licensee or potential licensee of "When You Wish Upon A Star" communicated any complaint or brought this use to the attention of Bourne?  A.  No.").  This is further evidenced by the fact that in all this time only one complaint about the song was received by TBS, Cartoon Network received no complaints and Fox received only negligible comments.  (Tingle-Heppner Dep. 33:08 – 33:11; Grodin Dep. 16:03 – 16:22; Lazzo Dep. 28:09 – 28:21).

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 48**:

Because the Episode dealt with Jewish stereotypes, Fox believed it had the potential to be offensive to the Jewish community. The Episode went through intensive scrutiny by Fox's Standards and Practices Department, which must approve any controversial content to be aired on the network. This process included many communications between the Family Guy creative team and Linda Shima-Tsuno, the Director of Standards and Practices, in which Ms. Shima-Tsuno listed all of the problematic content in the Episode that Fox wanted cut, and Mssr MacFarlane and Zuckerman attempted to justify keeping that content. (Fakler Decl. Ex. C (Shima-Tsuno Tr. 8:3-14:3, 16:14-23; Pl. Exs. 11,12, 13,14, 15, 17, 18)).

**DEFENDANTS' RESPONSE**:

Disputed to the extent that the Plaintiff uses the term "intensive scrutiny."  Every episode of Family Guy must go through scrutiny by Fox's Standards and Practices Department, which must approve <u>all</u> the content to be aired on the network.  Furthermore, it was usually the case that if there was a certain portion of the script that MacFarlane or Zuckerman thought was particularly funny they would fight to keep it in.  (MacFarlane Dep. 21:11 – 24:04) ("If there was

something that I really wanted, he would fight for it . . . [w]e would talk beforehand and decide what we thought were, you know, the funniest jokes and whatnot and then we would call them."); (Zuckerman Dep. 09:19 – 10:09) ("[I]n general . . . After the table read, we would meet with the broadcast standards executives who would give their thoughts on the script. They would later send those thoughts over in writing. We would negotiate with them, giving up certain jokes to keep other jokes, adjusting jokes so that it took care of whatever their concern was, and then we would record the show."); (Shima-Tsuno Dep. 08:03 – 14:03, 16:14 – 16:23) ("Q. Can you please explain to me what exactly is standards and practices?  A. We review material for acceptability for broadcast.").

### PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 49:

Fox went so far as to provide copies of the script to two rabbis for their input. (Fakler Decl. Ex. C (Shima-Tsuno Tr. 14:17-19:5); Pl. Exs. 17, 18, 19).

### DEFENDANTS' RESPONSE:

Undisputed, except to the extent that the Plaintiff uses the term "went so far."

### PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 50:

Both rabbis that were shown a copy of the script for the Episode found Jew to be offensive. (Fakler Decl. Ex. C (Shima-Tsuno Tr. 14:17:-18:17); Plaintiff's Ex. 19).

### DEFENDANTS' RESPONSE:

Disputed. One rabbi was not offended by the episode, but Shima-Tsuno believed that he thought the song might offend some people. (Shima-Tsuno Dep. 15:24 – 16:05) ("He was not offended by the episode, but I do believe that he thought the song might offend some people."). The second rabbi did not like the entire episode, which includes the Family Guy Song. (Shima-Tsuno 17:20 – 18:01) ("She didn't like it at all").

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 51**:

In fact, Ms. Shima-Tsuno testified that everyone who heard Jew found it offensive. (Fakler Decl. Ex. C (Shima-Tsuno Tr. 16:6-13)).

**DEFENDANTS' RESPONSE**:

Plaintiff mischaracterizes Shima-Tsuno's deposition testimony. She never states that "everyone who reviewed the song had a problem with it," rather she states that she believes that everyone thought that the song <u>might</u> offend some people. (Shima-Tsuno Dep. 13:21 – 16:13) ("I do believe that he thought the song might offend some people. I think everyone thought that . . . I believe everyone mentioned the song, so I am assuming he did too.").

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 52**:

The Episode was not cleared during Season Two for broadcast because senior management felt it was "too potentially offensive." (Fakler Decl. Ex. C (Shima-Tsuno Tr. 19:10-15)).

**DEFENDANTS' RESPONSE**:

Undisputed.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 53**:

Due to the highly offensive nature of the Episode, Fox initially refused to air the Episode and it remained unseen by the public for years. (Fakler Decl. Ex. H (Siegel-Shattuck Tr. 10:3-11:2); Fakler Decl. Ex. G (Lazzo Tr. 10:17-11:2)).

**DEFENDANTS' RESPONSE**:

Disputed. The Episode was not initially aired by Fox because senior management felt it was "too <u>potentially</u> offensive." (Shima-Tsuno Dep. 19:10 – 19:15) ("Senior Management felt that it was just too potentially offensive"). The Episode was first telecast on The Cartoon Network Inc.'s Adult Swim programming service on November 9, 2003 and was repeatedly telecast thereafter. (Lazzo Dep. 10:22 – 11:02) ("Q. [W]hen was the first telecast of the

Episode? A. November 9, 2003.  Q. How many times to date has the Episode been telecast for

Cartoon Network?  A. I believe it's 36 times.").  The Episode was ultimately televised by Fox

Broadcasting on December 10, 2004, since by that time it had already been telecast numerous

times by the Cartoon Network Inc.'s Adult Swim programming service and released on DVD

without any public controversy. (Seigel-Shattuck Dep. 10:09 – 11:02) ("20th Century Fox

Television . . . approved it creatively.  Q. And do you know if standards and practices approved

it for broadcast? A. No . . . Q.  And why did Fox change its position on that?  A. Well, by that

time it had already aired several times on Cartoon Network and it had also been released on

DVD and there was no public outcry or comment on it, so they felt it was safe to air.").

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 54:

A Standards and Practices Executive for the Turner Entertainment Group had concerns
about airing the Episode and commented that the Episode was "likely to offend some viewers."
(Fakler Decl. Ex. I (Tingle-Heppner Tr. 15:16-16:18, 23:9-27:16); Pl. Ex. 39).

## DEFENDANTS' RESPONSE:

Disputed.  A Standards and Practices Executive for the Turner Entertainment Group had

concerns that <u>one line</u> of the Episode "would possibly offend some viewers," but the Episode

was approved for telecast when alternate lines were suggested. (Tingle-Heppner Dep. 15:16 –

27:16) ("[A]lternate lines were presented for review and we reviewed those according to our

practice . . . [a]nd then the decision was made by the network to move forward . . . I merely

identified the line that I wasn't comfortable with airing . . . Q. [O]nce you found that line

acceptable, what actions did you take? . . . A. . . .with that line changed, I was ok with airing it . . .

Q. Well you were obviously concerned about the episode.  You asked for the line to be changed,

what was your concern?  A.  My concern was that it would possibly offend some viewers.").

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 55**:

When the Episode finally aired years later, one line about Jews was changed for broadcast from "even though they killed my lord" to "I don't think they killed my lord." (Fakler Decl. Ex. D (MacFarlane Tr. 39:13-23, 45:1-24); Fakler Decl. Ex. I (Tingle-Heppner Tr. 18:18-27:16, 31:7-32:19); Pl. Exs. 21, 39).

**DEFENDANTS' RESPONSE**:

Undisputed.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 56**:

When TBS accidentally aired the Episode with the original lyrics, a viewer wrote TBS to let them know they were "very offended" by the lyrics. (Fakler Decl. Ex. I (Tingle-Heppner Tr. 32:25-36:3); Pl. Ex. 40).

**DEFENDANTS' RESPONSE**:

Disputed. When TBS accidentally aired the Episode with the original lyrics, <u>one</u> viewer

wrote TBS to let them know that <u>she</u> was "very offended" by the lyric "Even though they killed

my Lord." (Tingle-Heppner Dep. 32:25-36:03; Pltf's Ex. 40)

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 57**:

Notably, when the Episode was released on DVD, the more offensive line, blaming Jews for killing Jesus Christ, was reinstated. (MacFarlane Decl. Ex. A (DVD release of the Episode at time code 7:44-7:49-Chapter 2/6)).

**DEFENDANTS' RESPONSE**:

Disputed, except undisputed that the version of the Family Guy Song in the Episode on

DVD contains the original lyric "Even though they killed my Lord."

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 58**:

Star is a "standard" that is used worldwide for television, film, commercials, musical recordings, live performances and other uses. It is an important source of income for Bourne. (Horan Decl. ¶ 11).

**DEFENDANTS' RESPONSE**:

Defendants do not dispute that Wish Upon A Star is a "'standard' that is used worldwide for television, film, commercials, recordings, live performances and other uses." Defendants dispute that it is an important source of income for Bourne. Plaintiff cites no admissible evidence that Wish Upon A Star is an important source of income for Bourne.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 59**:

Star has mainstream appeal and the mainstream market is the most lucrative segment of the market. It is also the market most likely to be taken aback by a controversial and offensive connection with a song, directly impacting the song's ability to still speak its message. (Soroka Decl. ¶ 33).

**DEFENDANTS' RESPONSE**:

Disputed. Plaintiff cites no admissible evidence. Moreover, Plaintiff provides no basis for Soroka's opinion. Indeed, the Episode first aired almost five years ago and in all that time Plaintiff has not received a single complaint about the Family Guy Song. (Bourne Dep. 22:16 – 22:24) ("Q. Prior to March 2007 had anyone communicated any complaint to Bourne with respect to this use of 'When You Wish Upon A Star?' A. No. Q. Had any licensee or potential licensee of 'When You Wish Upon A Star' communicated any complaint or brought this use to the attention of Bourne? A. No.").

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 60**:

The offensive use of Star in the Episode has likely had and will continue to have a negative effect on the commercial value and licensing potential of this beloved song. (Soroka Decl. ¶ 34).

**DEFENDANTS' RESPONSE**:

Disputed. This is not a fact, but merely an opinion by a purported expert. Moreover, Plaintiff provides no basis for Soroka's opinion. Indeed, the Episode first aired almost five years

ago and in all that time Plaintiff has not received a single complaint about the Family Guy Song. (Bourne Dep. 22:16 – 22:24) ("Q. Prior to March 2007 had anyone communicated any complaint to Bourne with respect to this use of 'When You Wish Upon A Star?'  A. No.  Q. Had any licensee or potential licensee of "When You Wish Upon A Star" communicated any complaint or brought this use to the attention of Bourne? A. No."). Moreover, Plaintiff admittedly has no evidence of market harm or market substitution.  (Bourne Dep. 60:21 – 60:22) ("Q. Bourne has no evidence of market harm or market substitution?  A. That is correct.").

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 61:

With respect to Defendants' particular use of Star, Bourne's problem is not that Jew contains funny lyrics or is satiric, Bourne is willing to grant these types of synch licenses for Star. However, Bourne must be certain that the licensed use will not tarnish or damage the image of the song in the mind of the public because this will harm the established markets for Star. (Berrocal Decl. ¶¶ 15-18).

## DEFENDANTS' RESPONSE:

Disputed.  Plaintiff provides no basis for its assertions and cites no admissible evidence regarding what it considered at the time of the license request or the reasons for its denial of the request.

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 62:

The anti-Semitic content of Jew associates Star with highly offensive and hurtful lyrics. This is precisely the kind of offensive comedic content Bourne does not want associated with Star and epitomizes a license request Bourne would reject. (Berrocal Decl. ¶¶ 16-17; Horan Decl. ¶ 34).

## DEFENDANTS' RESPONSE:

Disputed.  Plaintiff provides no basis for its assertions.  Moreover, the Family Guy Song is not offensive.  Indeed, the song was first aired almost five years ago and in all that time Plaintiff has not received a single complaint about the Family Guy Song. (Bourne Dep. 22:16 –

22:24) ("Q. Prior to March 2007 had anyone communicated any complaint to Bourne with respect to this use of 'When You Wish Upon A Star?' A. No. Q. Had any licensee or potential licensee of 'When You Wish Upon A Star' communicated any complaint or brought this use to the attention of Bourne? A. No.").

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 63:

Star is frequently licensed for synchronization use in comedy programs, including when the song is used in sketches for comedic effect. (Horan Decl. ¶¶ 13-16).

## DEFENDANTS' RESPONSE:

Disputed. Plaintiff provides no basis for its assertion that Wish Upon A Star is "frequently licensed for synchronization use in comedy programs, including when the song is used in sketches for comedic effect." No evidence regarding synchronization use in comedy programs was served in response to Defendants' discovery requests or provided at Plaintiff's deposition.

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 64:

Consequently, there is an established market for comedic synchronization uses of Star. (Horan Decl. ¶¶ 13-16).

## DEFENDANTS' RESPONSE:

Disputed. Plaintiff provides no basis for its assertion that there is an established market for comedic synchronization uses of Star. No evidence regarding an established market for comedic synchronization uses of Star was served in response to Defendants' discovery requests or provided at Plaintiff's deposition.

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 65:

Bourne also licenses many of its other songs for comedic uses. (Horan Decl. ¶ 17).

**DEFENDANTS' RESPONSE**:

Disputed. Plaintiff provides no basis for its assertion that it licenses many of its other songs for comedic uses. No evidence regarding Bourne's licensing of other songs for comedic uses was served in response to Defendants' discovery requests or provided at Plaintiff's deposition.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 66**:

The comedic use of a song in synchronization with an audiovisual work can and often does include contrasting or "juxtaposition" [sic] the lyrics and theme of the song with the visuals playing on screen for a humorous effect. (Horan Decl. ¶¶ 18-23).

**DEFENDANTS' RESPONSE**:

Disputed. Plaintiff provides no basis and cites no admissible evidence for its assertion that "[t]he comedic use of a song in synchronization with an audiovisual work can and often does include contrasting or 'juxtaposition' [sic] the lyrics and theme of the song with the visuals playing on screen for a humorous effect."

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 67**:

There is also an established licensing market for derivative works that change the lyrics to popular songs and Bourne issues these types of licenses as long as it is comfortable that the use will not harm the value of the song by, for example, creating negative associations with the song in the mind of the public. (Horan Decl. ¶¶ 24-26).

**DEFENDANTS' RESPONSE**:

Disputed. Plaintiff provides no basis and cites no admissible evidence for its assertions. No evidence regarding what Bourne considered at the time of the license request or the reasons for its denial of the request was served in response to Defendants' discovery requests or provided at Plaintiff's deposition.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 68**:

Defendants have obtained licenses to change lyrics to pre-existing musical compositions and use such altered musical compositions in episodes of Family Guy. (Fakler Decl. Ex. K, L, M (MacFarlane, Murphy and Fox Responses to Requests for Admissions No. 43)).

**DEFENDANTS' RESPONSE**:

Undisputed.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 69**:

Although Star has not yet been licensed in this way, other songs owned by Bourne have and Bourne would certainly license a comedic or satiric use of Star with lyric changes, under appropriate circumstances. (Horan Decl. ¶ 27).

**DEFENDANTS' RESPONSE**:

Disputed.  Plaintiff provides no basis and cites no admissible evidence for its assertions.

No evidence regarding what Bourne considered at the time of the license request or the reasons

for its denial of the request was served in response to Defendants' discovery requests or provided

at Plaintiff's deposition.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 70**:

Bourne has licensed several songs for comedic use on Family Guy in scenes depicting or discussing various irreverent or provocative themes. (Horan Decl. ¶¶ 28-32).

**DEFENDANTS' RESPONSE**:

Disputed.  Plaintiff provides no basis and cites no admissible evidence for its assertions.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 71**:

If television shows and other similar potential licensees were allowed to use Star without paying for a license, as Defendants did, the cumulative loss in license fees would obviously cause harm to the market for Star. Such unlicensed comedic uses would also compete with and substitute for Bourne's licensed comedic uses. (Horan Decl. ¶¶ 35-36).

**DEFENDANTS' RESPONSE**:

Disputed. Plaintiff provides no basis and cites no admissible evidence for its assertions. Defendants' use of Wish Upon A Star was parodic. (MacFarlane Dec. ¶ 8; Zuckerman Dec. ¶ 5). Moreover, Plaintiff admittedly has no evidence of market harm or market substitution. (Bourne Dep. 60:21 – 60:22) ("Q. Bourne has no evidence of market harm or market substitution? A. That is correct."). Indeed, the Episode first aired almost five years ago and in all that time Plaintiff has not received a single complaint about the Family Guy Song. (Bourne Dep. 22:16 – 22:24) ("Q. Prior to March 2007 had anyone communicated any complaint to Bourne with respect to this use of 'When You Wish Upon A Star?' A. No. Q. Had any licensee or potential licensee of 'When You Wish Upon A Star' communicated any complaint or brought this use to the attention of Bourne? A. No.").

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 72**:

At any given point in time, there are only so many comedic uses for Star that will be made. If one network sitcom, for example, were to use Star as part of a joke on the show during a given season, a competing sitcom would avoid using Star so as not to appear as though they were copying the first show. That second sitcom, which would have paid a license fee, will now choose another song to include in the show. In other words, every time Star is used without a license, one less licensed use of Star may be made and that is one less license fee that Bourne will earn. It follows that unlicensed programs and movies using Star would compete directly with and substitute for Bourne's licensed programs and movies when distributed in the DVD and other home video markets. (Horan Decl ¶¶ 35-36).

**DEFENDANTS' RESPONSE**:

Disputed. Plaintiff provides no basis and cites no admissible evidence for its assertions. Moreover, Plaintiff admittedly has no evidence of market harm or market substitution. (Bourne Dep. 60:21 – 60:22) ("Q. Bourne has no evidence of market harm or market substitution? A. That is correct.").

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 73**:

If uses such as Defendants' unlicensed use were widespread, it would cause grave damage to Bourne's business. First, a greater number of highly offensive uses would further harm the reputation of Star. Second, Bourne would be deprived of licensing revenue to which it is entitled for such uses. Third, those unlicensed uses would compete with and substitute for Bourne's licensed comedic uses, suppressing demand for licensed uses. (Berrocal Decl. ¶ 18).

**DEFENDANTS' RESPONSE**:

Disputed. Plaintiff admittedly has no evidence of market harm or market substitution. (Bourne Dep. 60:21 – 60:22) ("Q. Bourne has no evidence of market harm or market substitution? A. That is correct"). Moreover, the Episode first aired almost five years ago and in all that time Plaintiff has not received a single complaint about the Family Guy Song. (Bourne Dep. 22:16 – 22:24) ("Q. Prior to March 2007 had anyone communicated any complaint to Bourne with respect to this use of 'When You Wish Upon A Star?' A. No. Q. Had any licensee or potential licensee of 'When You Wish Upon A Star' communicated any complaint or brought this use to the attention of Bourne? A. No.").

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 74**:

The first four melody notes of Jew are identical to the first four melody notes of Star, and they are repeated in both songs, in the identical place -- at the beginning of the second section and again at the beginning of the last section. (Wilbur Decl. ¶¶ 25, 31, 33).

**DEFENDANTS' RESPONSE**:

Defendants do not dispute that the first four pitches in the melody in the Family Guy Song are identical to the first four pitches in the melody in Wish Upon A Star and they are identical at the beginning of the second section. Defendants dispute that the first four melody notes and their repeats in the Family Guy Song are same as the first four melody notes of Wish Upon A Star. Melody notes consist primarily of pitch and rhythm. (Ferrara Dec. ¶ 2, Ex. B ¶ 3). The melodic rhythms in the first four melody notes and their repeats in the Family Guy Song are

different from the melodic rhythm in the first four melody notes and their repeats in Wish Upon

A Star. Defendants dispute that the first four melody notes of the beginning of the last section of

the Family Guy Song are identical to the first four melody notes at the beginning of the last

section of the Family Guy Song. The beginning of the last section in the Family Guy Song is the

"coda" or reprise and the first four pitches are not the same in the Family Guy Song. (Ferrara

Dec. ¶ 2, Ex. B ¶ 21, Ex. E; Wilbur Dec. ¶ 5; Wilbur Dep. 116:12 – 117:13).

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 75:

The identical first four notes of Star and Jew are an ascending octave followed by a descending whole step then half step. This intervallic pattern is repeated -- although it starts on a different note -- in bars 3, 11, and 27 of "Jew." Despite the use of different pitches, however, bar 1 of Star and bars 3 (11 and 27) of Jew sound very similar and related. (Wilbur Decl. ¶ 26; 31, 33).

## DEFENDANTS' RESPONSE:

Undisputed.

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 76:

In "Jew," the fifth, sixth and seventh melody notes in bar 2 harmonize with the corresponding notes in Star. This harmonizing occurs again in bar 4, after the repeat in Jew of the intervallic pattern copied from Star. Such harmonies are significant because after hearing the first four "identifying signature" notes of Star in "Jew," one will continue to hear Star in his or her mind while Jew is playing, without being disturbed or surprised by a discordant note. (Wilbur Decl. ¶¶ 27, 31, 33).

## DEFENDANTS' RESPONSE:

Disputed. Finding a "similarity" between three melody notes in bar 2 in the Family Guy

Song that (1) have an opposite melodic contour to the three melody notes in bar 2 in Wish Upon

A Star (one goes up and the other goes down) and (2) that do not share one correlative pitch in

common is without any musicological support and defies common sense. (Ferrara Rep. Dec. ¶

26)

**<u>PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 77</u>:**

In addition to having similar melodies, the melodic contours of Jew and Star are related because they are either parallel or inverted. Moreover, the melodic rhythm of Jew (in both the Leadsheet and the Score) is nearly identical to Star throughout the entire song. (Wilbur Decl. ¶¶ 30, 32, 35).

**<u>DEFENDANTS' RESPONSE</u>:**

Disputed.  There are only three melodic contours:  melodies ascend, descend, or repeat the same pitch.  (Ferrara Dec. ¶ 2, Ex. B, fn. 8).  If the melodic contour of two melodies are "parallel," (e.g., if they both ascend), they share that generic similarity with millions of other melodies.  Consequently, this is not a meaningful similarity.  (Ferrara Rep. Dec. ¶ 25).  If the melodic contour of two melodies are "inverted," the melodies are in are in opposite directions.  Finding similarity in melodies with opposite melodic contours has no musicological support and defies common sense.  (Ferrara Rep. Dec. ¶ 26).  Furthermore, out of 157 melodic notes in the Family Guy Song, 68 have the same melodic rhythm as the Deposit Copy of Wish Upon A Star sheet music.  Thus, approximately 64% of the melodic rhythms in the Family Guy Song and Wish Upon A Star's music are different.  (Ferrara Rep. Dec. ¶ 21).  Approximately 22% of the correlative melodic rhythms in the Family Guy Song are the same as in Wish Upon A Star while 78% of the melodic rhythms in the Family Guy Song are not the same as in Wish Upon A Star. (Ferrara Rep. Dec. ¶ 21).

**<u>PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 78</u>:**

With respect to harmonic similarities, over 75% of the chords in Jew are either the same as or share the same basic notes as the corresponding chords in Star. Indeed, with the exception of measures 21 and 22 in the B section of "Jew," all of Star can be sung using the chords found in Jew and vice versa. (Wilbur Decl. ¶¶ 28, 36, 44-45).

**DEFENDANTS' RESPONSE**:

Disputed. Every three-note chord shares two of its three pitches with other chords and every four-note chord shares three of its four pitches with other chords. Three centuries of music theory consistently maintain that chords are defined by their (1) quality (major, minor, diminished, or augmented) and (2) function (based on the scale degree on which it is built). To find that (1) "major" chords that share two notes with "minor" or "diminished" chords have the same quality and (2) chords that are built on different scale degrees but that share two or three notes with other chords have the same function countervails three centuries of musicological understanding of harmony. (Ferrara Rep. Dec. ¶¶ 18, 19) There are a far greater amount of harmonic differences than similarities in the Family Guy Song and Wish Upon A Star. (Ferrara Dec. ¶ 2, Ex. B ¶¶ 11 – 17).

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 79**:

The lyric in Jew uses the words "wish upon a star" from the lyric and title of Star. The lyric of Jew also uses vowels that rhyme with the lyric of Star in at least nine places, there are at least six phrases in Jew which share the same rhythm and rhyme as the corresponding phrase in Star, and at least one phrase in Jew that shares the same internal rhyming pattern as the corresponding phrase in Star. (Wilbur Decl. ¶¶ 29, 34, 94).

**DEFENDANTS' RESPONSE**:

Disputed. The only relevant lyrical similarity is in the use of the "wish upon a star" phrase, in a different place, in the Family Guy Song. The substantial lyrical changes in the Family Guy Song represent new expression and a very different message and meaning as compared with Wish Upon A Star. (Ferrara Dep. 10:18 – 11:16; Ferrara Rep. Dec. ¶ 29).

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 80**:

Star and Jew are almost identical in structure and are comprised of the same four sections (A A1 B A2) which as between the songs differ from each other in only minor ways. The songs have the same number of notes (95), and are nearly the same time duration (91 seconds for Star

and 92 seconds for Jew). Each individual sung section of Jew is nearly identical in length to Star. (Wilbur Decl. ¶¶ 31, 37-38, 43).

## DEFENDANTS' RESPONSE:

Disputed. Structural transformation in the Family Guy Song is evidenced by the creation of two, new substantial sections of music that are absent in Wish Upon A Star: the "interlude" and the "coda" sections. (Ferrara Dec. ¶ 2, Ex. B ¶¶ 6, 8; Ferrara Rep. Dec. ¶ 14). Ms. Wilbur recanted the omission of the "coda" or reprise section in the Family Guy Song. (Wilbur Dec. ¶ 5; Wilbur Dep. 116:12 – 117:13). There is no correlative "coda" or reprise structure in Wish Upon A Star. (Ferrara Dec. ¶ 2, Ex. B ¶ 8). Furthermore, Ms. Wilbur conceded that insofar as the "coda" is part of the Family Guy Song, the purported number of notes (95) and seconds (91 or 92) would have to be changed. (Wilbur Dep. 113:2 – 113:14, 116:12 – 117:13). Thus, this purported "undisputed fact" is even disputed by Plaintiff's own musicologist. There is no section in Wish Upon A Star that is "nearly identical in length" to the "interlude" or "coda" sections in the Family Guy Song. (Ferrara Dec. ¶ 2, Ex. B ¶¶ 6, 8).

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 81:

The interlude in Jew is musically unrelated to the rest of Jew and is a separate standalone piece. And, when one watches the Episode, it is clear that is simply an underscore to picture. (Wilbur Decl. ¶ 12, 91).

## DEFENDANTS' RESPONSE:

Disputed. Murphy testified that he recorded the Family Guy Song in four pieces for "recording convenience" (Murphy Dep. 23:02 – 23:03) and because the sections or pieces of the Family Guy Song that have a vocal part generate a different royalty "rate of payment from BMI" than those that do not include a vocal part. (Murphy Dep. 23:23 – 24:19). It is obvious in reviewing the "TV Music Cue Sheet" (Pltf's Ex. 4) that Murphy has divided the Family Guy

Song into the following four parts for these reasons and that the four parts remain part of the whole Family Guy Song. (Ferrara Rep. Dec. ¶¶ 15, 16).

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 82:

Murphy, the composer of "Jew," confirmed the interlude in Jew is a different piece of music, and listed it as such on the cue sheet. (Fakler Decl. Ex. A (Murphy Tr. 21:23-24:2)); Pl. Ex. 4).

## DEFENDANTS' RESPONSE:

Disputed. Plaintiff mischaracterizes Murphy's testimony. Murphy never confirmed that the "interlude in [the Family Guy Song] is a different piece of music." (Murphy Dep. 21:23 – 24:02) ("There was a sequence in the middle of the song on screen where Peter goes out the window and tumbles and winds up on the ground, and so I did a musical interlude with no vocal during that section . . . Q. And you gave that section a different title – A. Yes. Q. And why did you do that? A. Just because it wasn't specific – it was kind of based on the – a little bit on the song but not really . . .").

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 83:

The last two notes of Jew are identical, in pitch and rhythm, to the last two notes of the Cliff Edwards arrangement of Star as performed in the movie "Pinocchio," which is striking. Jew also copies some of the other performance elements of the Cliff Edwards arrangement of Star. (Wilbur Decl. ¶¶ 41-42).

## DEFENDANTS' RESPONSE:

Disputed. The last two notes in the Family Guy Song are at the end of the "coda" section and are different. (Ferrara Dec. ¶ 2, Ex. B ¶ 21, Ex. E). Wilbur (Wilbur Dec. ¶ 5; Wilbur Dep. 116:12 – 117:13) concedes the "coda" or reprise is the ending of the Family Guy Song. These two notes at issue are part of a total 157 melody notes in the Family Guy Song. (Ferrara Dec. ¶ 2, Ex. B ¶ 23)

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 84:**

The chords in Jew and Star also use the same two chromatic devices, chord movement going from the diminished chord to the major chord and chord movement when three notes of three consecutive chords move chromatically, either up or down. Both of these devices are very recognizable and add to the similarity of the songs. (Wilbur Decl. ¶¶ 46-48).

**DEFENDANTS' RESPONSE:**

Disputed. These chromatic devices are part of the harmony and there are a far greater number of harmonic differences than there are similarities due to the transformation of harmony in the Family Guy Song. (Ferrara Dec. ¶ 2, Ex. B ¶¶ 9 – 19).

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 85:**

Murphy's Leadsheet version of Jew sufficiently evoked the feeling of Star to convey the purported parody. (Fakler Decl. Ex. A (Murphy Tr. 13:17-14:9)); Wilbur Decl. ¶ 54).

**DEFENDANTS' RESPONSE:**

Disputed. There is no testimony or evidence that the Leadsheet version of the Family Guy Song was sufficient to evoke Wish Upon A Star for the purpose of the intended parody. (Murphy Dep. 13:20 – 14:09) ("Q. And was it your intent to even in your first version evoke 'When You Wish Upon A Star'? A. My first intention was to try and write something sweet and Disney-esque, without – without actually utilizing any material from 'Wish Upon a Star' to try and convey the joke in the script. Q. And what joke was that? A. That it was a parody of a scene from a Disney movie, and the sweet melody coupled with the ridiculous lyrics and the absurd imagery on the screen would be funny. Q. And in your view, your first version of that accomplished that goal? A. Yes, I think my first version evoked the feeling of a Disney song.").

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 86:**

The Leadsheet version of Jew is less similar to Star than is the Score. (Fakler Decl. Ex. K, L, M (MacFarlane, Murphy and Fox Responses to Requests for Admissions Nos. 45 and 46);

(Fakler Decl. Ex. A (Murphy Tr.12:7-13:8; 19:2-21:18)), Compare Pl. Exs. 2 and 3; Wilbur Decl. ¶¶ 54-60, 77, 79).

**DEFENDANTS' RESPONSE**:

Undisputed.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 87**:

Given how musically similar Jew is to Star, Murphy could easily have written Jew in a way that took less of Star for a shorter duration of the song, while still reminding the listener of Star. (Wilbur Decl. ¶¶ 49, 51).

**DEFENDANTS' RESPONSE**:

Disputed.  The Family Guy Song incorporates a sufficient portion of the musical composition from Wish Upon A Star to conjure up the image of Wish Upon A Star.  However, there is no wholesale copying of Wish Upon A Star in the Family Guy Song.  In comparison to Wish Upon A Star, the Family Guy Song is substantially transformed and changed into new musical expression.  (Ferrara Dec. ¶ 2, Ex. B ¶ 31).

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 88**:

The same first four measures of Jew could have been used after which Jew could have gone in another musical direction entirely. In that scenario the composer would have evoked Star in the mind of the listener without using and repeating so much of its other creative content. (Wilbur Decl. ¶ 50).

**DEFENDANTS' RESPONSE**:

Disputed.  The Family Guy Song incorporates a sufficient portion of the musical composition from Wish Upon A Star to conjure up the image of Wish Upon A Star.  However, there is no wholesale copying of Wish Upon A Star in the Family Guy Song.  In comparison to Wish Upon A Star, the Family Guy Song is substantially transformed and changed into new musical expression.  (Ferrara Dec. ¶ 2, Ex. B ¶ 31).

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 89:**

The Score accurately represents Jew as it appeared in the Episode. (Wilbur Decl. ¶ 53; (Fakler Decl. Ex. A (Murphy Tr. 14:18-18:22)); Pl. Ex. 2 (Score)).

**DEFENDANTS' RESPONSE:**

Defendant disputes that the version of the Family Guy Song that was performed in the Episode is accurately reflected in the score because the melody is not reflected in the score. (Murphy Dep. 15:09 – 16:08) ("The melody, I would have to actually listen to a recording to see if any of the rhythm or the notes were changed by Seth'[s] vocal.").

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 90:**

Ferrara never communicated with Murphy concerning any element of Jew and did not even know the name of the song he had been hired to defend. (Fakler Decl. Ex. E (Ferrara Tr. 13:13-14:9)).

**DEFENDANTS' RESPONSE:**

Defendants do not dispute that Ferrara never communicated with Murphy concerning any element of the Family Guy Song. However, there was no musicological basis for him to speak with Murphy in order for him to write his report. Defendants dispute that Ferrara did not even know the name of the song he had been hired to defend. At that moment in the deposition, he may not have remembered the name of the Family Guy Song, but he most certainly knew the name of it.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 91:**

Ferrara had no basis for his opinion that an "upside down" melodic contour or descending notes made ascending with an inner melodic contour that moves up and down would sound "parodic" or funny to the average listener. (Fakler Decl. Ex. E (Ferrara Tr. 137:11-144:23)).

**DEFENDANTS' RESPONSE**:

Disputed.  (Ferrara Dep. 137:11 – 144:23) ("It's based on scholarship that I know quite well and I've written about and that's called the phenomenology of music, and that is the way in which all listeners listen to music as a series of retained information and projected information as to where it's going.  On that basis, certainly I believe that that would be the case.").

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 92**:

Ferrara includes the unrelated interlude in his transcription of Jew thereby adding over 50% more musical material that is unrelated to Jew to support his claim that Jew is "transformed" and therefore is "new musical expression." Adding the interlude allows Ferrara to claim that Jew has a different structure --a "C" section -- and 157 notes rather than 95 (excluding the coda), thus diluting the percentage of identical rhythms and pitches he claims exists between Jew and Star. (Ferrara Decl. ¶¶ 6, 8, 10-11; Wilbur Decl. ¶¶ 75, 85, 92).

**DEFENDANTS' RESPONSE**:

Disputed.  The "interlude" is part of and in the middle of the Family Guy Song, which any listener hears when watching the episode.  (Ferrara Dec. ¶ 2, Ex. B ¶ 7; Ferrara Rep. Dec. ¶¶ 5, 14-17).  Furthermore, Plaintiff's musicologist disputes that there are 95 melodic notes in the Family Guy Song after she conceded that the "coda" or reprise is part of and must be counted in the Family Guy Song.  (Wilbur Dep. 113:2 – 113:14, 116:12 – 117:13).

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 93**:

Ferarra ignores that bars 3, 11 and 27 of Jew copy the intervallic pattern of the first four "identifying signature" notes of the hook of Star (ascending octave followed by descending whole step and half step). (Wilbur Decl. ¶¶ 62, 76).

**DEFENDANTS' RESPONSE**:

Disputed.  Ferrara wrote: ". . . in bars 3, 11, 19, and 42 the sequences of pitches are different but the melodic contour is the same in Pinocchio song and Family Guy song." (Ferrara Dec. ¶ 2, Ex. B ¶ 23).

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 94**:

Ferrara ignores that fifth, sixth and seventh notes of the hook of Star (in bar 2) harmonize and complement the corresponding notes in "Jew," and that this harmony between Star and Jew is repeated in bar 4 after Jew repeats the intervallic pattern of the first four identifying signature notes of Star. Ferrara also ignores that this four bar harmonic similarity between Jew and Star is repeated in all three A sections of both songs. (Wilbur Decl. ¶ 80).

**DEFENDANTS' RESPONSE**:

Disputed. Finding a "similarity" between the fifth, sixth and seventh notes of the hook of Wish Upon A Star in bar 2 to the three notes in bar 2 in the Family Guy Song is without musicological support and defies common sense because the correlative three notes in bar 2 in Wish Upon A Star and the Family Guy Song (1) have an opposite melodic contour (one goes up and the other goes down) and (2) they do not share one correlative pitch in common. (Ferrara Rep. Dec. ¶ 26). The seven note hook in Wish Upon A Star is never heard in the Family Guy Song in its entirety; only the first four notes are in the Family Guy Song. Furthermore, each iteration of the four notes from the seven-note hook in Wish Upon A Star is followed by substantial transformative change in the three notes in bar 2: the last three notes of the seven note hook have opposite melodic contours and do not even share one correlative pitch. These substantial changes in the seven-note hook result in new musical expression in the Family Guy Song. (Ferrara Rep. Dec. ¶ 27).

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 95**:

Ferrara ignores that the melody of Jew and Star move in parallel for most of the B section of both songs and, because he ignores all lyrics, that the similarity between the two songs is enhanced by rhymes ("find" and "kind") and internal rhyming ("love" and "of" in Star versus "Stein" and "whine" in Jew), which appear in the identical place in both songs. (Wilbur Decl. ¶ 81).

**DEFENDANTS' RESPONSE**:

Disputed. Most of the melody in the B section in the Family Guy Song and Wish Upon A Star are not in "parallel" melodic contour. (Ferrara Dec. ¶ 2, Ex. B ¶ 22, Ex. F). There are only three melodic contours: melodies ascend, descend, or repeat the same pitch. (Ferrara Dec. ¶ 2, Ex. B, fn. 8). If the melodic contour of two melodies are "parallel," (e.g., if they both ascend), they share that generic similarity with millions of other melodies. Consequently, this is not a meaningful similarity. (Ferrara Rep. Dec. ¶ 25). The only relevant lyrical similarity is in the use of the "wish upon a star" phrase, in a different place, in the Family Guy Song. The substantial lyrical changes in the Family Guy Song represent new expression and a very different message and meaning as compared with Wish Upon A Star. (Ferrara Dep. 10:18 – 11:16; Ferrara Rep. Dec. ¶ 29).

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 96**:

Ferrara acknowledges only identically notated chords when comparing the chords of Jew and Star even though chords comprising identical notes can be represented in various, equally correct ways. Ferrara ignores many chords in Jew that contain virtually the same notes or that sound indistinguishable from the corresponding chord in Star. Ferrara also incorrectly notated certain chords in an attempt to make Jew and Star appear more different than they actually are. (Wilbur Decl. ¶¶ 63-74).

**DEFENDANTS' RESPONSE**:

Disputed. Every three-note chord shares two of its three pitches with other chords and every four-note chord shares three of its four pitches with other chords. Three centuries of music theory consistently maintain that chords are defined by their (1) quality (major, minor, diminished, or augmented) and (2) function (based on the scale degree on which it is built). To find that (1) "major" chords that share two notes with "minor" or "diminished" chords have the same quality and (2) chords that are built on different scale degrees but that share two or three notes with other chords have the same function countervails three centuries of musicological

understanding of harmony. (Ferrara Rep. Dec. ¶¶ 18, 19). There are a far greater amount of harmonic differences than similarities in the Family Guy Song and Wish Upon A Star. (Ferrara Dec. ¶ 2, Ex. B ¶¶ 11 – 17).

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 97:

Ferrara transcribes performance elements from the Cliff Edwards version of Star from "Pinocchio" in order to make the two songs appear as different as possible. However, at his deposition Ferrara admitted that had he compared the Sheet Music to "Jew," there would have been many more rhythmic similarities, and indeed, he marked 68 notes with identical melodic rhythms between Star and Jew. (Wilbur Decl. ¶¶ 82-84, 86-88; Fakler Decl. Ex. E (Ferrara Tr. 120:24-128:9); Pl. Ex. 1 (Excerpted)).

## DEFENDANTS' RESPONSE:

Disputed. Ferrara compared a transcription of the recorded Family Guy Song with Wish Upon A Star, rather than using an earlier lead sheet or incomplete orchestra score of the Family Guy Song. An ordinary lay listener will compare the musical compositions at issue by listening to them, not by reading a musical score. Further, the song that Plaintiff claims infringes was the song performed on the television show, not the one on the lead sheet. There are other differences in a song as written, and as performed. Therefore, in keeping with musicological practices and in order to provide the most objective and accurate analysis of the musical compositions at issue, Ferrara prepared transcriptions of the musical compositions embodied in Wish Upon A Star and the Family Guy Song as they are heard in their respective film and television show. Out of 157 melodic notes in the Family Guy Song, 68 have the same melodic rhythm as the Deposit Copy sheet music. Thus, approximately 64% of the melodic rhythms in the Family Guy Song and the Deposit Copy sheet music are different. (Ferrara Rep. Dec. ¶ 21).

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 98**:

Ferrara excluded any analysis of the lyrics of Jew thereby ignoring the relationship of the words to the music of Jew, and the similarities between the words, rhymes, and rhythms of the lyrics of Jew and Star. (Fakler Decl. Ex. E (Ferrara Tr. 8:21-12:23); Wilbur Decl. ¶ 93).

**DEFENDANTS' RESPONSE**:

Disputed. The only relevant lyrical similarity is in the use of the "wish upon a star" phrase, in a different place, in the Family Guy Song. The substantial lyrical changes in the Family Guy Song represent new expression and a very different message and meaning as compared with Pinocchio song. (Ferrara Dep. 10:18 – 11:16; Ferrara Rep. Dec. ¶ 29).

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 99**:

There is no evidence that Star is based on the first seven notes of "Claire de Lune." (Wilbur Decl. ¶¶ 97-98).

**DEFENDANTS' RESPONSE**:

Undisputed.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 100**:

The Episode was first aired by Cartoon Network on November 9, 2003. (Fakler Decl. Ex. G (Lazzo Tr. 10:17-24), Defendants' 56.1 Statement ¶ 13).

**DEFENDANTS' RESPONSE**:

Undisputed.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 101**:

The Episode has aired 36 times since the initial air date. (Fakler Decl. Ex. G (Lazzo Tr. 10:25-11:2)).

**DEFENDANTS' RESPONSE**:

Undisputed.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 102**:

The Episode, including "Jew," was first distributed on home video by Fox Home Entertainment on or about September 9, 2003 as part of the Family Guy Season Three DVD set, which has been continuously sold since that time. The Episode and Infringing Song were again distributed on home video by Fox Home Entertainment on or about December 14, 2004 on the Family Guy – The Freakin' Sweet Collection DVD, which also has been continuously sold since that time. (Defendants' 56.1 Statement ¶ 13).

**DEFENDANTS' RESPONSE**:

Undisputed, except that the Family Guy Song is not "infringing."

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 103**:

Jew has also been distributed in other media and formats, including PSP. (Answer ¶ 28).

**DEFENDANTS' RESPONSE**:

Disputed. The Episode, not the Family Guy Song itself, has been distributed on DVD and on UMD for PSP.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 104**:

The Episode is prominently featured on the packaging for the DVDs and the status of the Episode as having been initially banned from broadcast by Fox (in part due to the controversial nature of Jew) is used as a selling point. (Fakler Decl. ¶ 31 Ex. O (copies of DVD sleeves); Fakler Decl. Ex. F (Cavanaugh Tr. 11:22-12:19); MacFarlane Decl. Ex. A (Commentary on DVD release of the Episode at time code 4:50-5:04 -Chapter 2/6)).

**DEFENDANTS' RESPONSE**:

Disputed. The Episode is not prominently featured on the packaging for the DVDs. Rather, it is mentioned in the text on the back cover of the DVD packaging. Nor does the packaging mention the Family Guy Song.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 105**:

Defendants Fox Television broadcast the Episode on television at least once. (Answer ¶ 27; Fakler Decl. Ex. D (MacFarlane Tr. 41:7-13); Fakler Decl. Ex. H (Siegel-Shattuck Tr. 10:20-11:2); Defendants' 56.1 Statement ¶ 13).

**DEFENDANTS' RESPONSE**:

Disputed.  Fox Broadcasting televised the Episode once.  (Answer ¶ 27).

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 106**:

Fuzzy Door is MacFarlane's production company and is involved in the production of "Family Guy." Fuzzy Door has no employees and MacFarlane essentially is Fuzzy Door. (Fakler Decl. Ex. D (MacFarlane Tr. 9:8-10:11)).

**DEFENDANTS' RESPONSE**:

Undisputed.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 107**:

MacFarlane is the creator and executive producer of "Family Guy." He was involved in and generally supervised the creation, development and production of the Episode. (MacFarlane Decl. ¶ 1).

**DEFENDANTS' RESPONSE**:

Undisputed.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 108**:

MacFarlane was involved in the writing of the lyrics and the music for Jew and he also performed "Jew." (Fox Response to Interrogatory No. 4).

**DEFENDANTS' RESPONSE**:

Undisputed.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 109**:

Jew has been commercially exploited outside the context of the Episode, when MacFarlane performed Jew live on stage at a "Family Guy Live" show. (Fakler Decl. Ex. D (MacFarlane Tr. 43:5-44:25)).

**DEFENDANTS' RESPONSE**:

Disputed. The entire Episode, including the Family Guy Song, was performed live on stage at a "Family Guy Live" show. The Family Guy Song has not been exploited separately.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 110**:

Murphy wrote the music for "Jew." (Fakler Decl. Ex. N (Fox Response to Interrogatory No. 4)).

**DEFENDANTS' RESPONSE**:

Disputed. Murphy wrote a portion of the music for the Family Guy Song. (Murphy Dep. 12:20 – 12:21, 13:02 – 13:08) ("Seth sang another version of it, and changed a few notes here and there . . . he changed a few notes at the beginning of each verse . . . Q. So Seth wrote that part of the final melody as opposed to you? A. Yes.").

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 111**:

Typically, when Bourne rejects a license request, it monitors the requesting party or program to be sure that its song is not used without Bourne's permission, but in this case the infringing Episode did not air until several years after the license was declined. (Horan Decl. ¶ 2).

**DEFENDANTS' RESPONSE**:

Defendants do not dispute that the Episode did not air until several years after the license was declined. Defendants dispute that typically when Bourne rejects a license request it monitors the requesting party or program to be sure that its song is not used without Bourne's

permission, as Plaintiff has provided no basis for this assertion and has not cited to any admissible evidence that this process occurred in this instance.

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 112:

Bourne did not discovery [sic] the use of Star in the Episode until March of 2007, when a Bourne Employee found a clip of Jew on the YouTube website. (Horan Decl. ¶ 3).

## DEFENDANTS' RESPONSE:

Disputed.   The Episode was widely telecast and distributed on DVD since the Fall of 2003.  (MacFarlane Dec. ¶ 5).

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 113:

Bourne spent a brief time investigating the infringement and verifying that the no license was granted, after which it promptly instructed legal counsel to protest to Fox. (Horan Decl. ¶¶ 4-9).

## DEFENDANTS' RESPONSE:

Disputed.  Plaintiff provides no basis for its assertion.

## PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 114:

Bourne attempted in good faith to negotiate a settlement with Fox for a few months, but after repeated delays by Fox Bourne filed this action in October of 2007. (Horan Decl. ¶ 10).

## DEFENDANTS' RESPONSE:

Disputed.  Bourne did not attempt to negotiate a settlement with Fox in good faith and there was no delay on Fox's part.  Defendants do not dispute that Bourne filed this action in October 2007.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 115**:

The Episode was first aired late at night on a minor cable network, and was only broadcast once on Fox's Network channel. (Defendants' 56.1 Statement ¶ 13, Lazzo Tr. 24:6-28:1.)

**DEFENDANTS' RESPONSE**:

Disputed.  The Episode was first telecast on The Cartoon Network Inc.'s Adult Swim programming service on November 9, 2003 at 11:00 PM and has been telecast at least thirty-six times since that time on both The Cartoon Network Inc. and TBS, neither of which are minor cable networks.  (Lazzo Dep. 24:06 – 28:10).  Defendants do not dispute that the Episode was broadcast only once by Fox Broadcasting Company.

**PLAINTIFF'S CLAIMED UNDISPUTED FACT NO. 116**:

Bourne protested to Fox promptly after an investigatory period, and after Fox's repeated delays in responding to settlement requests, filed this action within 7 months of learning of the infringement. (Horan Decl. ¶ 3-10).

**DEFENDANTS' RESPONSE**:

Disputed.

Dated: New York, New York
       June 4, 2008

                          LOEB & LOEB LLP

                          By: _____
                              Jonathan Zavin (JZ-1846)
                              Jacques Rimokh (JR-0745)
                              Shelly Elimelekh (SE-0597
                              345 Park Avenue
                              New York, New York 10154-1895
                              (212) 407-4000


                          Attorneys for Defendants

NY722478.1
202894-10011