UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
BOURNE CO.,

        Plaintiff,

    -against-

TWENTIETH CENTURY FOX FILM CORPORATION,
FOX BROADCASTING COMPANY, TWENTIETH
CENTURY FOX TELEVISION, INC., TWENTIETH
CENTURY FOX HOME ENTERTAINMENT, INC.,
FUZZY DOOR PRODUCTIONS, THE CARTOON
NETWORK, INC., SETH MACFARLANE, WALTER
MURPHY,

        Defendants.
------------------------------------X

07 Civ. 8580(DAB)
MEMORANDUM & ORDER

DEBORAH A. BATTS, United States District Judge.

    Plaintiff Bourne Co. ("Bourne") is the sole owner of the copyright to the popular song "When You Wish Upon a Star". (Pl. 56.1 Stmt. at 1.) Defendants Seth MacFarlane ("MacFarlane"), Fuzzy Door Productions Inc., Twentieth Century Fox Film Corporation, and Twentieth Century Fox Television (a unit of Defendant Fox Broadcasting Company) create and produce an animated television series called "Family Guy" ("the Show" or "the Series") including an episode entitled "When You Wish Upon a Weinstein" ("the Episode"). (Id. at 7.) Defendant Cartoon Network, Inc. aired the Episode in November 2003 and has telecast it no fewer than thirty-six times. (Id. at 8.) Defendant Walter Murphy ("Murphy") is a composer of television film scores for

1

"Family Guy" and wrote at least part of a song entitled "I Need a Jew" that appears in the Episode.    (Id. at 9; Def. 56.1 Counter-Stmt. at 4.)

Plaintiff has sued Defendants for copyright infringement, alleging that "I Need a Jew" "consists of a thinly-veiled copy of the music from 'When You Wish Upon a Star' coupled with new anti-Semitic lyrics." (Compl. at 3, 31-35.)  This matter is before the Court on the Parties' cross-motions for summary judgment. For the reasons contained herein, Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's Cross-Motion for Summary Judgment is DENIED.


## I. BACKGROUND

Except where noted, the following facts are undisputed. "When You Wish Upon a Star" is a popular song by Leigh Harline and Ned Washington originally written for the classic Walt Disney film Pinocchio, in which it was sung by Cliff Edwards as the voice of the character Jiminy Cricket. (Pl. 56.1 Stmt. at 2.) Plaintiff Bourne owns the copyright registrations for the unpublished version of the song, the published version as included in Pinocchio, the published sheet music, and other arrangements of the song. (Id.)  Over 100 performing artists and orchestras have recorded the song, and it has also been used

2

extensively in commercials, television and film.  (Pl.  56.1
Stmt. at 2.)  The song has also been used in the opening
sequences of the Disney anthology television series, "The
Wonderful World of Disney", in Walt Disney Pictures' opening
logos, and in television advertisements for its Disneyland theme
park.[1]  (Def. 56.1 Stmt. at 2.)  Defendants argue, and Plaintiff
disputes, that the song is "an integral part of Walt Disney's and
the Walt Disney Company's personality and reputation" and is
"associated with Walt Disney in the public mind." (Id.; Pl. 56.1
Counter-Stmt. at 22.)

    "Family Guy" is an animated, comedic TV series which airs on
the Fox Network and the Cartoon Network, among other networks.
(Def. 56.1 Counter-Stmt. at 3-4; Def. 56.1 Stmt. at 3.)  The show
frequently pokes fun at popular TV shows, movies, songs and
celebrities.  (Pl. 56.1 Counter-Stmt. at 23.)  The show regularly
contains irreverent, iconoclastic plotlines and pop-cultural
references.  (Id.)  The subject of this suit is a half-hour
episode entitled "When You Wish Upon a Weinstein" which was

---

    [1]  Plaintiffs dispute that Defendants have offered proof "as
to the manner in which the Disney Company used the song in
connection with its motion pictures or advertisements, and
"merely admits that the song or portions of the song were
sometimes used, often in medleys with other songs, in the opening
title music of a television series produced by the Walt Disney
Company."  (Pl. 56.1 Counter-Stmt. at 22.)

produced in 2000.  (Def. 56.1 Stmt. at 3.)  The Episode is centered around the show's father character, Peter, and his inability to manage his family's finances.  (Id.)  After hearing his friends talk about how men with Jewish-sounding names have helped them to achieve financial success, Peter decides that he "needs a Jew" to help him with his finances.  (Id. at 4.)  The overall theme of the Episode is that Peter's beliefs based upon racial stereotypes, even potentially "positive" ones, are ridiculous.  (Id.)  At the end of the Episode, Peter says to his wife, Lois, "I see what you're saying.  The Jewish are just like us.  No better, no worse."  (Id.)  According to Defendants, "one of the comedic values present is that although this is an obvious concept, it was not obvious to Peter.  (Id. at 10.)

The scene at issue in this litigation depicts Peter looking out of a window up at the night sky in a manner similar to that of the toymaker Gepetto in Walt Disney's Pinocchio when Gepetto is wishing for a "real boy".  (Def. 56.1 Stmt. at 5-6; compare Pinocchio at time code 13:10 - 13:20 with Episode at time code 6:00 - 6:20.)  Peter sings a song entitled "I Need a Jew"; the lyrics are as follows:

> Nothing else has worked so far,
> So I'll wish upon a star,
> Wondrous dancing speck of light,
> I need a Jew.

> Lois makes me take the rap,
> 'Cause our check-book looks like crap,
> Since I can't give her a slap,
> I need a Jew.
>
> Where to find a Baum or Steen or Stein
> To teach me how to whine and do my taxes?
> Though by many they're abhorred,
> Hebrew people I've adored.
>
> Even though they killed my Lord[2]
> I need a Jew.

(Def. 56.1 Counter-Stmt. at 11.)  The cartoon accompanying the song further depicts "Jews as magical creatures that come to Peter in the form of a magical spaceship that turns into a flying dreidel."  (Def. 56.1 Stmt. at 6; Rimokh Decl. Ex. F, MacFarlane Dep. at 9.)

The Parties agree that the song was created in a manner intended to evoke "When You Wish Upon a Star."  (Def. 56.1. Stmt. at 5.)  The tune of "I Need a Jew" is similar to "When You Wish Upon a Star" and the first four melody notes of "I Need a Jew" are identical to the first four melody notes of "When You Wish Upon a Star".  (Pl. 56.1 Stmt. at 14-15.)[3]

---

[2] An alternate version of the song changes this line to "I don't think they killed my Lord."  (Def. 56.1. Counter-Stmt. at 11.)

[3] The Parties dispute the extent of the similarities between the tune of the two songs.  (Compare Pl. 56.1 Stmt. at 14-19 with Def. 56.1. Counter-Stmt. at 36-49.)

Defendants initially sought a license from Plaintiff to use "When You Wish Upon a Star" for their song, but Plaintiff refused.  (Def. 56.1. Stmt. at 5.)  After permission was denied, MacFarlane and co-Producer David Zuckerman ("Zuckerman") asked Murphy to write music that would evoke "When You Wish Upon a Star" to go with lyrics that had already been written.  (Def. 56.1 Counter-Stmt. at 5-6.)  With "When You Wish Upon a Star" in mind, Murphy wrote a version of "I Need a Jew"; later, either MacFarlane or Zuckerman mentioned to him "that they would like the melody to be even closer to the Disney song" and "changed a few notes here and there" "to make the average person realize that this was going to be a parody."  (Def. 56.1 Counter-Stmt. at 6; Rimokh Decl. Ex. G 11:22-13:8.)

Fox Broadcasting initially decided not to televise the Episode as part of Season Two of Family Guy due to concerns about the potentially controversial religious content of the Episode. (Def. 56.1 Stmt. at 4-5.)  The Episode, including the song "I Need a Jew", was first distributed on home video by Fox Home Entertainment on or about September 9, 2003 as part of the Family Guy "Volume 2, Season 3" DVD box set, which has remained on sale since that time.  (Id.)  The Episode was first telecast by the Cartoon Network's Adult Swim programming service on November 9, 2003 and was repeatedly telecast thereafter.  (Id.)  The Episode

was ultimately televised by Fox Broadcasting on December 10, 2004.  (Id.)  The Episode was also distributed on DVD by Fox Home Entertainment on or about December 14, 2004 as part of the "Family Guy-The Freakin' Sweet Collection" DVD, which has also been on sale since that time. (Id.)

Bourne did not discover the use of "When You Wish Upon a Star" in the Episode until March 2007 when a Bourne employee found a clip on YouTube.  (Pl. 56.1 Stmt. at 21.)  Bourne filed this action within seven months of learning of the alleged infringement. (Id.)

## II. DISCUSSION

A.    Legal Standard for Summary Judgment

A district court should grant summary judgment when there is "no genuine issue as to any material fact," and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see also Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2d Cir. 2000).  Genuine issues of material fact cannot be created by mere conclusory allegations; summary judgment is appropriate only when, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party."  Heublein v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993) (citing

7

Matsushita Elec. Industr. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

In assessing when summary judgment should be granted, "there must be more than a 'scintilla of evidence' in the non-movant's favor; there must be evidence upon which a fact-finder could reasonably find for the non-movant." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). While a court must always "resolv[e] ambiguities and draw[ ] reasonable inferences against the moving party," Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson), the non-movant may not rely upon "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Id. at 12. Instead, when the moving party has documented particular facts in the record, "the opposing party must 'set forth specific facts showing that there is a genuine issue for trial.'" Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (quoting Fed. R. Civ. P. 56(e)). Establishing such facts requires going beyond the allegations of the pleadings, as the moment has arrived "'to put up or shut up.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted). Unsupported allegations in the pleadings thus cannot create a material issue of fact. Id.

8

The major facts at issue in this litigation are not in dispute. For the purposes of this motion, the Parties agree that Defendants' use of the song "When You Wish Upon a Star" would be an infringement of Bourne's rights under the Copyright Act but for a finding of fair use. (Def. Mem. of Law at n. 1.) The Parties agree that "When You Wish Upon a Weinstein" incorporates musical elements from "When You Wish Upon a Star" and was created in a manner intended to evoke that song. (Def. 56.1 Counter-Stmt. 19, 20.) The Parties also agree that at least one of the purposes of the song used in the Episode was to hold bigotry and people like Peter Griffin up to ridicule. (Id. at 11.) The Parties disagree, however, on certain other facts including: whether "When You Wish Upon a Star" is associated either with the Walt Disney Company or with Walt Disney himself, and whether Disney's purported anti-Semitism is a part of the popular lore surrounding the person of Walt Disney.[4] However, even after resolving all ambiguities and drawing all reasonable inferences in favor of the Plaintiff, Defendants are nevertheless entitled to Summary Judgment.

---

[4] The Parties also disagree about what the song "I Need a Jew" can be "reasonably perceived" to comment on. That is a legal question, resolved infra at C. See also Leibovitz v. Paramount Pictures Corporation, 137 F.3d 109, 114 (2d Cir. 1998).

B. The Fair Use Standard

"From the infancy of copyright protection, some opportunity for fair use of copyrighted materials has been thought necessary to fulfill copyright's very purpose, '[t]o promote the Progress of Science and useful Arts....'" <u>Campbell v. Acuff-Rose Music, Inc.</u>, 510 U.S. 569, 575 (1994) (quoting U.S. Const., Art. I, § 8, cl. 8). The doctrine of Fair Use is now codified in Section 107 of the 1976 Copyright Act. § 107 calls for a four-factor test:

> Limitations on exclusive rights: Fair use:
>
> 2. Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include-
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107 (1994).

According to the Supreme Court, "[t]he fair use doctrine []
'permits [and requires] courts to avoid rigid application of the
copyright statute when, on occasion, it would stifle the very
creativity which that law is designed to foster.'" <u>Campbell v.
Acuff-Rose Music, Inc.</u>, 510 U.S. 569, 576-577 (1994) (quoting
<u>Stewart v. Abend</u>, 495 U.S. 207, 236 (1990) (internal quotation
marks and citation omitted)).  Further, "[t]he task is not to be
simplified with bright-line rules, for the statute, like the
doctrine it recognizes, calls for case-by-case analysis."  <u>Id.</u> at
577.


C. The Satire/Parody Distinction

Because the four factors in Section 107 are applied
differently to parodies and satires, the starting point of the
Court's analysis is determining whether the Defendants' use of
"When You Wish Upon a Star" is properly considered satire,
parody, or neither, as those terms have come to be defined by
fair use caselaw.

The distinction between parody and satire turns on the
object of the "comment" made by the allegedly infringing work.

> For the purposes of copyright law, the nub of
> the definitions, and the heart of any
> parodist's claim to quote from existing
> material, is the use of some elements of a
> prior author's composition to create a new one

11

> that, at least in part, comments on that
> author's works. If, on the contrary, the
> commentary has no critical bearing on the
> substance or style of the original
> composition, which the alleged infringer
> merely uses to get attention or to avoid the
> drudgery in working up something fresh, the
> claim to fairness in borrowing from another's
> work diminishes accordingly (if it does not
> vanish), and other factors, like the extent of
> its commerciality, loom larger. Parody needs
> to mimic an original to make its point, and so
> has some claim to use the creation of its
> victim's (or collective victims') imagination,
> whereas satire can stand on its own two feet
> and so requires justification for the very act
> of borrowing.

Campbell, 510 U.S. at 580-581 (1994).

In Campbell v. Acuff-Rose Music, Inc., the Supreme Court analyzed the music group 2 Live Crew's rap/song "Pretty Woman" as a parody of the Roy Orbison rock ballad "Oh, Pretty Woman". 510 U.S. 569 (1994). The Court found that 2 Live Crew was, at least in part, commenting on the original. Id. They found the 2 Live Crew version "could reasonably be perceived as commenting on the original or criticizing it, to some degree" because "2 Live Crew juxtaposes the romantic musings of a man whose fantasy comes true, with degrading taunts, a bawdy demand for sex, and a sigh of relief from paternal responsibility." Id. at 583.

Likewise, the Second Circuit found parody in advertisement for the movie Naked Gun 33 1/3: The Final Insult in which a well-known Annie Leibovitz photograph of the actress Demi Moore was

12

recreated replacing the head of a pregnant Moore, with the

"smirking" head of Leslie Nielsen.  Leibovitz v. Paramount

Pictures Corporation, 137 F.3d 109, 114 (2d Cir. 1998).  The

Circuit held that:

> Being different from an original does not
> inevitably "comment" on the original.
> Nevertheless, the ad is not merely different;
> it differs in a way that may reasonably be
> perceived as commenting, through ridicule, on
> what a viewer might reasonably think is the
> undue self-importance conveyed by the subject
> of the Leibovitz photograph.

Leibovitz, 137 F.3d at 114 (quotations omitted).

On the other hand, the Second Circuit has recently addressed

the parody/satire distinction in the context of the artist Jeff

Koons' use of a fashion photograph, finding that use to be

satire.  Blanch v. Koons, 467 F.3d 244, 247 (2d Cir. 2006).  In

the Koons case, the artist (known as an "appropriation artist")

took part of a fashion photograph ("Silk Sandals"), depicting the

legs of a model wearing sandals, and repositioned that image in

the context of other images (other legs set on a backdrop of

images of confections) to create a new work, which was then

painted onto a canvas.  Blanch, 467 F.3d at 247. The Circuit

held that this work: "may be better characterized for these

purposes as satire - its message appears to target the genre of

which 'Silk Sandals' is typical, rather than the individual

13

photograph itself." <u>Blanch</u>, 467 F.3d at 254.

At least one other Court in this Circuit has held that the use of a copyrighted song in a new work to create a contrast with the original song's comment on the world (and "the assertedly delusional innocence of mainstream culture") is parody. In <u>Abilene Music, Inc. v. Sony Music Entertainment, Inc.</u>, the rapper Ghostface Killah's "sarcastic" use of "What a Wonderful World" was protected as parody where the Court found that "the song's take on the world...highlights the contrast between the two worldviews, and expresses the rapper's belief in the realism of his own perspective." <u>But see</u> <u>MCA, Inc. v. Wilson</u>, 425 F.Supp. 443, 453 (D.C.N.Y. 1976) (finding that Defendant's song "Cunnilingus Champion of Co. C" infringed on Plaintiff's rights in "Boogie Woogie Bugle Boy" because their song commented on life, and sexual mores, but not the original work).

The Defendants in this case have sought to justify their use of Plaintiff's copyrighted material as parody in two ways: 1) as a comment on the "saccharine sweet," "innocent" and "wholesome" worldview presented in and represented by "When You Wish Upon a Star", and 2) by evoking "the song most associated with Walt Disney and his company" commenting "on the song while simultaneously making a sharp point about Walt Disney's reputed

14

anti-Semitism."   (Def. Mem. of Law at 6-7.)[5]  Defendants argue

that their song works to "lampoon the 'purity' and 'wholesome'

values expressed in 'Wish Upon a Star'"; the song "turns the

sweetness of this idyllic message on its head by having Peter

ignorantly sing about stereotypes of Jewish people, while at the

same time earnestly, and innocently, wishing for a Jew, as if

they were some kind of mystical beings who, naturally, could help

him solve his financial problems."  (Def. Mem. of Law at 12.)

Plaintiff argues that Defendants' song "I Need a Jew", does not

criticize, ridicule, or in any way comment upon its song but

rather "ridicules anti-Semitism and Jewish stereotypes".  (Pl.

Mem. of Law at 17.)  It argues "[t]here is absolutely nothing

about ['I Need a Jew'] that overtly comments on or criticizes the

subject matter, quality or style of ['When You Wish Upon a

Star']." (Id. at 12.)

     The Court finds that by juxtaposing the "saccharin sweet"

song "When You Wish Upon a Star" with "I Need a Jew" the

Defendants do more than just comment on racism and bigotry

generally, as Plaintiff contends.  Rather, Defendants' use of

"When You Wish Upon a Star" calls to mind a warm and fuzzy view

---

      [5]  Defendants point out that these are only two of the
comments made by their song, including such other comments as
holding bigotry and people like Peter Griffin up to ridicule.
(Def. 56.1 Counter-Stmt. 11.)

of the world that is ultimately nonsense; wishing upon a star does not, in fact, make one's dreams come true. By pairing Peter's "positive," though racist, stereotypes of Jewish people with that fairy tale world-view, "I Need a Jew" comments both on the original work's fantasy of stardust and magic, as well as Peter's fantasy of the "superiority" of Jews. The song can be "reasonably perceived" to be commenting that any categorical view of a race of people is childish and simplistic, just like wishing upon a star.

This interpretation of "I Need a Jew" is supported by the visual elements on screen at the time the song is being sung by Peter in the Episode. The visual elements, depicting Peter staring out a window at a starry night, echo the equivalent scene in <u>Pinocchio</u> in which Gepetto is wishing for a real boy. It is undisputed that <u>Pinocchio</u> is the original context of the song "When You Wish Upon a Star". (Def. 56.1 Stmt. at 2.) The visual reference to <u>Pinocchio</u> makes plain that this is not a case in which the creators simply substituted new lyrics for a known song "to get attention or to avoid the drudgery in working up something fresh". <u>Campbell</u>, 510 U.S. at 580; <u>cf</u>. <u>MCA, Inc. v. Wilson</u>, 425 F.Supp. 443, 453 (D.C.N.Y. 1976), <u>Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.</u>, 109 F.3d 1394 (9th Cir. 1997). The creators of the Episode were clearly attempting to comment in

some way on the wishful, hopeful scene in <u>Pinocchio</u> with which
the song is associated.  Consequently, "I Need a Jew" is properly
understood as a parody of "When You Wish Upon a Star".

The Court's finding is further supported by Defendants'
proffered evidence that the song in the Episode makes an
additional comment, or "inside joke", about the "widespread
belief" that Walt Disney was anti-Semitic.  (Def. Mem. of Law at
12.)  Defendants argue that, "[t]he creators of the Family Guy
Song thought it would be the perfect, cutting commentary to use
the iconic song most closely-associated with Walt Disney, Wish
Upon a Star, in a parodic reverie where the main character
'wishes upon a star' for, of all things, a Jew."  (<u>Id.</u>)
Defendants have offered deposition testimony of the show's
creator, MacFarlane, and Executive Producer, Zuckerman, who both
testified that one of the song's intentions was to make a point
about Disney's alleged anti-Semitism.[6]  (Rimokh Decl Ex. F, M,
MacFarlane Dep. 51:12-51:14, 62:15-63:12; Zuckerman Dep. 24:07-
24:21.)

---

[6] The show has made this same joke, more recently, but
before the suit was filed against Defendants, in a 2005 Family
Guy movie, "Family Guy Presents Stewie Griffin: The Untold Story"
which at one point depicts  Walt Disney emerging from a cryogenic
chamber and asking "Are the Jews gone yet?"; when the scientist
in the cartoon tells him no, Disney replies, "Put me back in!"
(Def. Mem. of Law at 13.)

17

Plaintiff argues that the evidence fails to support Defendants' claim that they intended in the Episode at issue to comment on Walt Disney's purported anti-Semitism. (Pl. Mem. of Law at 18.) First, Plaintiff argues that although "When You Wish Upon a Star" "was sometimes used as a theme song ... by the Walt Disney Company" Bourne "specifically refused to admit that their song was associated in the minds of the public with the Disney Company or was in any way associated with Walt Disney individually or personally, and further refused to admit that the public associates the Disney Company with Walt Disney personally." (Id.) Further, Plaintiff argues that Defendants have provided "no admissible evidence that the public actually believes Mr. Disney was an anti-Semite." (Id. at 19.) However, Plaintiff misapprehends the nature of the inquiry in making both of these arguments. Defendants need to prove neither that the public associates the song with Walt Disney individually or personally nor "actually believes" Walt Disney was an anti-Semite; Defendants need only demonstrate that "a parodic character may be reasonably perceived." Campbell, 510 U.S. at 582-583. Further, the Supreme Court has held that the law protects parodies even when they fail to speak clearly. Campbell, at 582 quoting Yankee Publishing Inc. v. News America Publishing, Inc., 809 F.Supp. 267, 280 (S.D.N.Y. 1992)(Leval, J.)

18

(noting "First Amendment protections do not apply only to those who speak clearly, whose jokes are funny, and whose parodies succeed"). Therefore, even if Defendants intended to make an "inside joke" about Walt Disney's alleged anti-Semitism but that joke failed, it can still support a finding of fair use if it's "parodic character can be reasonably perceived."

Although this joke may not be an obvious one, Defendants have established sufficient facts for the Court to find that one of their intended comments in parodying "When You Wish Upon a Star" related to the reputation of Walt Disney as an anti-Semite and that such a comment may be "reasonably perceived". The Second Circuit has given weight to an artist's own explanation of their creative rationale when conducting fair use analysis, Blanch, 467 F.3d at 255, and here Defendants have produced uncontroverted evidence that a parallel joke about Walt Disney was discussed in the writers' room prior to the recording of the song. (Rimokh Decl. Ex. F, M MacFarlane Dep. 51:12-51:14, 62:15-63:12; Zuckerman Dep. 24:07-24:21.) What's more, the fact that Defendants have attempted to make the same joke, subsequent to their creation of the Episode, but prior to this litigation, lends credence to their claim that such an inside joke was

intended[7] and further demonstrates that the creators expected
their viewership to understand the joke.  The Court takes
judicial notice of the fact that the internet contains many
references to the claim that Walt Disney was an anti-Semite.[8]
The Court further notes that Defendants have proffered, in
addition to other evidence, a Los Angeles Times Book Prize-
winning biography of Walt Disney which notes that "it was no
secret that Walt Disney was a fervent anti-Communist" but
"[a]nother question - one that would haunt him for the rest of
his life and even haunt his reputation decades after he died -
was whether he was also an anti-Semite."  (Rinokh Decl. 2 at Ex.
B, NEAL GABLER, Walt Disney: The Triumph of the American
Imagination 454).  Further, the Court the finds that it may be
reasonably perceived that Walt Disney is associated with the Walt

---

[7]  Plaintiff makes much of the fact that this "inside joke"
was not used by the creators to justify the parody in internal
discussions of the Episode at the Fox network, or by some of the
people associated with writing the Episode at their depositions.
(Pl. Mem. of Law at 18-20.)  The Court need not police the
precise timing of the creative process in order to determine the
comment made by Defendant's use of the copyrighted work.  See
Blanch, 467 F.3d at 256.  In addition, because the Court reaches
the same conclusion, that Defendants work is a parody, on other
grounds, the Court need not address the question of whether this
set of arguments creates a genuine issue of material fact.

[8]  Two of the first five "hits" on a Google Search of
"Disney Jews" are "The Straight Dope: Was Walt Disney a fascist?"
and "Did Walt Disney Hate Jews: Part One Video".

Disney Company.  (Rimokh Decl. Ex F, MacFarlane Dep. 57:24-60:19, stating that "I mean the man was the company in so many ways.  I mean his name is on everything, his signature is on everything, Walt Disney ... I mean the Disney Corporation has his name on it.")  Therefore, the Court finds that it may be reasonably perceived that "I Need a Jew" was commenting on Walt Disney's alleged anti-Semitism.

    Consequently, Defendants have established that their song, "I Need a Jew" contains several layers of parody of Plaintiff's copyrighted work "When You Wish Upon a Star."

D. Applying the Four Factor Analysis to Defendants' Parody

    The Supreme Court has cautioned that a finding of parody, alone, is not sufficient for a Court to find fair use.  <u>See</u> <u>Campbell</u>, 510 U.S. at 579-581 (finding that "parody may or may not be fair use").  Rather, Courts must engage in an individualized analysis of the four factors set out in Section 107.  (<u>Id.</u> at 577.)

    1.  The Purpose and Character of the Use;

    Having already found that Defendants' work "I Need a Jew" comments on "When You Wish Upon a Star" the Court must now turn to the question of whether it adds something new to the original

21

song and qualifies as "transformative".    Leibovitz, 137 F.3d at

114.    According to the Supreme Court:

> The central purpose of this investigation is
> to see, in Justice Story's words, whether the
> new work merely "supersede[s] the objects" of
> the original creation, or instead adds
> something new, with a further purpose or
> different character, altering the first with
> new expression, meaning, or message; it asks,
> in other words, whether and to what extent the
> new work is "transformative."

Campbell, 510 U.S. at 579 (quotations and citations omitted).

The Second Circuit found it "plain" that superimposing the

face of Leslie Neilsen on a photographed body intended to look

like Demi Moore's was "transformative" of Leibovitz's original

photograph. 137 F.3d at 114; see also Abilene, 320 F.Supp.2d at

91 (S.D.N.Y. 2003).    In the context of that caselaw, it is clear

that the song "I Need a Jew" is transformative of the original

work here.

The lyrics of "I Need a Jew" are almost entirely different

from those of "When You Wish Upon a Star" - and are strikingly

different in tone and message.    In addition, the tune of the

song, though very similar to the original, is at least somewhat

different.    And, although they are both songs written for

cartoons to express the wish of the singer, the wishes, and

indeed the cartoons themselves, could not be more different.    The

Court finds that the new work is transformative; consequently,

the first factor weighs in favor of a finding of fair use.

    2.    The Nature of the Copyrighted Work;

There is no question that in this case, the original song ("When You Wish Upon a Star") is a "creative expression for public dissemination" which falls within the "core of the copyright's protective purposes." Campbell, 510 U.S. at 586. But, as in Campbell, this fact, "is not much help in this case, or ever likely to help much in separating the fair use sheep from the infringing goats in a parody case, since parodies almost invariably copy publicly known, expressive works." Id.

Consequently, the Court affords little weight to this second prong of the analysis.

    3.    The Amount and Substantiality of the Portion Used in Relation to the Copyrighted Work as a Whole;

When the use at issue is a parody, it is undisputed that the parody "must be able to 'conjure up' at least enough of that original to make the object of its critical wit recognizable." Campbell, 510 U.S. at 588. This stems from that fact that parody's humor "necessarily springs from recognizable allusion to its object through distorted imitation." Id. The Supreme Court has held that:

> Once enough has been taken to assure
> identification, how much more is reasonable will
> depend, say, on the extent to which the song's
> overriding purpose and character is to parody the
> original or, in contrast, the likelihood that the
> parody may serve as a market substitute for the
> original. But using some characteristic features
> cannot be avoided.

Id.

The facts in this case make clear that the Defendants

thought about how much of the original song was necessary to make

the object of their parody recognizable.  While Murphy originally

wrote a new song that evoked the original, MacFarlane or

Zuckerman asked him to make changes in order to make the allusion

clearer.  (Def. 56.1 Counter-Stmt. at 6; Rimokh Decl. Ex. G

11:22-13:8.)  Indeed, Murphy expressed concern that by making

changes to bring the song closer to the original, he would no

longer be creating a "unique" song, as he is required to do under

his contract with Fox.  (Id.)  MacFarlane nevertheless insisted

that a few notes be changed to make the reference to "When You

Wish Upon a Star" apparent to the ordinary listener.  (Id.)  The

internal, creative dispute over how much of the original to use

demonstrates that Defendants were concerned about taking just

enough of the original to make their point clear.  Therefore,

even assuming that Defendants took substantially all of the song,

as in Campbell, that borrowing was necessary to allow the parodic

24

character of their work to come through.  Consequently, the Court
find the third factor weighs in favor of Defendants.


        4.    The Effect of the Use Upon the Potential Market for or
              Value of the Copyrighted Work.

        Plaintiff makes two arguments that market harm exists here.

First, Plaintiff argues that widespread, similar unlicensed uses

(including other irreverent comedic uses) "would substitute for

and compete with licensed comedic programs, in addition to

depriving Bourne of significant licensing revenue."  (Pl. Mem. of

Law at 30-31.)  Second, it argues that "I Need a Jew" harms the

value of its song because it is "unquestionable" that it "would

be highly offensive to a significant number of people" harming

the original song by association.  (Id. at 32.)  Both arguments

rely on a misconception of the fourth factor analysis.

        The Second Circuit recently held that:

              In considering the fourth factor, our concern
              is not whether the secondary use suppresses or
              even destroys the market for the original work
              or its potential derivatives, but whether the
              secondary  use  usurps  the  market  of  the
              original  work.   The  market  for  potential
              derivative  uses  includes  only  those  that
              creators  of  original  works  would  in  general
              develop or license others to develop.

Blanch v. Koons, 467 F.3d 244, 258 (2d Cir. 2006) (citations

omitted).  The Supreme Court has noted that where the second use

is "transformative" "market substitution is at least less
certain, and market harm may not be so readily inferred."
Campbell, 510 U.S. at 590.  The Court noted that "as to parody
pure and simple, it is more likely that the new work will not
affect the market for the original in a way congnizable under
this factor, that is, but acting as a substitute for it.  This is
so because parody and the original usually serve different market
functions."  Id.

     In this case, there can be no question that "I Need a Jew"
does not usurp the market for "When You Wish Upon a Star."  As
the Supreme Court predicted, the parody and the original here
serve different market functions.  Even Plaintiff admits that its
song is known for its wholesomeness and sweetness, where Family
Guy's parody of it is so different as to be (they argue)
offensive.  (Pl. 56.1 Stmt. at 9-14.)  Plaintiff does not even
make the contention that "I Need a Jew" could in any way
substitute for "When You Wish Upon a Star."

     Indeed, Plaintiff argues for a reading of the fourth factor
that would swallow the rule entirely.  All uses of copyrighted
work under a fair use rationale deprive the owner of licensing
fees.  If a parody of the original work would usurp the market
for licensing other comedic uses of the original work, then all
parodies would fail under this prong of the analysis.  The

26

Supreme Court clearly intended otherwise as did Congress in
creating an opportunity for fair use under 17 U.S.C. § 107.  See
Campbell, supra at 590.

Neither can Plaintiff succeed on its theory that their song
is harmed by association with "I Need a Jew."  It was the Supreme
Court's intention for the parody doctrine to protect new works
that have reason to fear they will be unable to obtain a license
from copyright holders who wish to shield their works from
criticism.  Campbell, 510 U.S. at 597.  Any harm enured to the
original by association is likely to be the exact use of the
original material that the law aims to protect.

Therefore, the Court finds that the fourth factor mitigates
in favor of the Defendants.


5.   Aggregate Analysis

In total, the Court has afforded little weight to factor two
and finds that factors one, three, and four each weigh heavily in
Defendants' favor.  Stepping back and considering the statutory
analysis as a whole, there can be no question that Defendants'
use of "When You Wish Upon a Star" constitutes fair use.  As the
Second Circuit held in the Leibovitz case, the owner of the
rights to a well-known work "must expect, or at least tolerate, a
parodist's deflating ridicule."  137 F.3d 114-15.  Plaintiff

27

reaps the benefit of their song's association with <u>Pinocchio</u> and Disney, and enjoys its reputation for wholesomeness; it is precisely that beneficial association that opens the song up to ridicule by parodists seeking to take the wind out of such lofty, magical, or pure associations.  The Supreme Court found that such deflating uses serve the important social function of shedding light on the earlier work.  <u>Campbell</u>, 510 U.S. at 579. Transformative uses of a copyrighted work, such as the Family Guy parody here, "lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright." <u>Id.</u>

### III. CONCLUSION

Accordingly, for the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED.  Plaintiff's Cross-Motion for Summary Judgment is DENIED.  The Clerk of the Court is directed to terminate all pending motions and close the docket in this case.

SO ORDERED.

Dated:    New York, New York

March 16, 2009

Deborah A. Batts
United States District Judge