UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
BOURNE CO.,                                              :

                Plaintiff,                             :

              -against-                                  :

TWENTIETH CENTURY FOX FILM                               :
CORPORATION, FOX BROADCASTING
COMPANY, TWENTIETH CENTURY FOX        :   07 Civ. 8580 (DAB)
TELEVISION, INC., TWENTIETH
CENTURY FOX HOME                                         :
ENTERTAINMENT, INC., FUZZY DOOR
PRODUCTIONS, INC., THE CARTOON                           :
NETWORK, INC., SETH MCFARLANE,
WALTER MURPHY,                                           :

              Defendants.                            :
-------------------------------------------------------- X

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF THEIR MOTION FOR ATTORNEYS' FEES AND COSTS

LOEB & LOEB LLP
Jonathan Zavin (JZ-1846)
Jonathan Neil Strauss (JS-1090)
Shelly Elimelekh (SE-0597)
345 Park Avenue
New York, New York 10154-1895
(212) 407-4000

*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT......................................................................................... 1

ARGUMENT ..................................................................................................................... 3

I.  Defendants Are Entitled to Recover Their Reasonable Attorneys' Fees and Costs For Defending Against Plaintiff's Objectively Unreasonable Copyright Claim ...................................................................................................................... 3

    A.  Defendants' Are the Prevailing Party ................................................... 5

    B.  Plaintiffs' Assertion and Maintenance of Their Copyright Claim Was Directly Contrary to Well-Settled Law in the Context of the "Fair Use" Doctrine, and Was Objectively Unreasonable in Fact and Law .......................... 5

        1.  Defendants' Use of "When You Wish Upon a Star" Was Clear Parody ................................................................................ 6

        2.  Consideration of the "Fair Use" Factors Further Demonstrates the Objective Unreasonableness of Plaintiff's Claim ............................. 7

            a.  Defendants' Use of "When You Wish Upon a Star" Was Clearly Transformative, and Plaintiffs' Contention to the Contrary Was Objectively Unreasonable ..................................... 8

            b.  Plaintiff's Allegations of "Market Harm" Rely on a Complete, and Legally Untenable, Misconception of the Fourth Factor Analysis............................................................. 10

    C.  Considerations of Compensation and Deterrence Favor an Award of Attorneys' Fees Here ............................................................................. 13

    D.  The Relative Financial Positions of the Parties Does Not Militate Against A Fee Award................................................................................ 14

II. The Amount of the Requested Award of Attorneys' Fees and Costs is Reasonable ................................................................................................ 15

CONCLUSION................................................................................................................ 16

TABLE OF AUTHORITIES

**CASES**

*Abilene Music, Inc. v. Sony Music Entertainment, Inc.*,
    320 F. Supp. 2d 84 (S.D.N.Y. 2003) ............................................................................... 6

*Attia v. Soc'y of the N.Y. Hosp.*,
    12 Fed. Appx. 78 (2d Cir. 2001) ..................................................................................... 15

*Baker v. Urban Outfitters, Inc.*,
    431 F. Supp. 2d 351 (S.D.N.Y. 2006) .............................................................................. 4

*Blanch v. Koons*,
    467 F.3d 244 (2d Cir. 2006) ..................................................................................... 9, 11-12

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) ................................................................................................ Passim

*Chivalry Film Prods. v. NBC Universal, Inc.*,
    05 Civ. 5627, 2007 U.S. Dist. LEXIS 86889 (S.D.N.Y. Nov. 27, 2007) ................. 4, 14-15

*Contractual Obligation Prods., LLC v. AMC Networks, Inc.*,
    546 F. Supp. 2d 120 (S.D.N.Y. 2008) ........................................................................... 4-5

*Crown Awards, Inc. v. Discount Trophy & Co.*,
    564 F. Supp. 2d 290 (S.D.N.Y. 2008) .............................................................................. 4

*Earth Flag Ltd. v. Alamo Flag Co.*,
    154 F. Supp. 2d 663 (S.D.N.Y. 2001) .......................................................................... 4, 14

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994) ....................................................................................................... 3-4

*Hofheinz v. AMC Prods., Inc.*,
    CV-00-5827, 2003 U.S. Dist. LEXIS 16940 (E.D.N.Y. Sep. 3, 2003) ........................ 13-14

*Hudson v. Universal Studios, Inc.*,
    04 Civ. 6997, 2009 U.S. Dist. LEXIS 18729 (S.D.N.Y. Mar. 9, 2009) ........................... 4

*Leibovitz v. Paramount Pictures Corp.*,
    137 F.3d 109 (2d Cir. 1998) ........................................................................................... 11

*Mallery v. NBC Universal, Inc.*,
    07 Civ. 2250, 2008 U.S. Dist. LEXIS 20893 (S.D.N.Y. Mar. 18, 2008) ........................ 14

*Mattel, Inc. v. Walking Mountain Prods.*,
    CV 99-8543, 2004 U.S. Dist. LEXIS 12469 (C.D. Cal. June 24, 2004) .......................... 7

*Matthew Bender & Co. v. West Publ'g Co.*,
 240 F.3d 116 (2d Cir. 2001) .................................................................................................. 4

*Polsby v. St. Martin's Press*,
 No. 97 Civ. 690, 2000 U.S. Dist. LEXIS 596 (S.D.N.Y. Jan. 18, 2000) ............................... 15

*Rodriguez v. Klum*,
 05-CV-10218, 2009 U.S. Dist. LEXIS 8148 (S.D.N.Y. Jan. 8, 2009) ................................... 14

*Screenlife Establishment v. Tower Video, Inc.*,
 868 F. Supp. 47 (S.D.N.Y. 1994) ............................................................................................ 4

*Vargas v. Transeau*,
 04 Civ. 9772, 2008 U.S. Dist. LEXIS 59344 (S.D.N.Y. Aug. 6, 2008) .................................. 4

*Video-Cinema Films, Inc. v. Cable News Network, Inc.*,
 98 Civ. 7128, 2003 U.S. Dist. LEXIS 4887 (S.D.N.Y. Mar. 31, 2003) ............................ 4, 12

*Viva Video, Inc. v. Cabrera*,
 9 Fed. Appx. 77 (2d Cir. 2001) ............................................................................................... 5

*Williams v. Crichton*,
 891 F. Supp. 120 (S.D.N.Y. 1994) .......................................................................................... 4

**STATUTES**

17 U.S.C. § 107 ............................................................................................................... 1-2, 8

17 U.S.C. § 505 ................................................................................................................. 1, 3-4

Fed. R. Civ. P. 54(d)(2) ............................................................................................................ 1

Fed. R. Civ. P. 54(d)(2)(B) ..................................................................................................... 15

Fed. R. Civ. P. 54(d)(2)(C) ..................................................................................................... 15

Defendants Twentieth Century Fox Film Corporation (including its unit, Twentieth Century Fox Television, incorrectly named herein as Twentieth Century Fox Television, Inc.), Fox Broadcasting Company and Twentieth Century Fox Home Entertainment, Inc. (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion, pursuant to 17 U.S.C. § 505 and Fed. R. Civ. P. 54(d)(2), the Court's Memorandum and Order dated March 16, 2009, and the Judgment of the Court, dated March 17, 2009, to recover the attorneys' fees and costs they incurred in defending against this action brought under the Copyright Act.[1]

## PRELIMINARY STATEMENT

Defendants, as the prevailing parties in this copyright action, respectfully request that they be awarded their reasonable attorneys' fees and costs, as provided in the Copyright Act, and in furtherance of the fundamental policies behind the Copyright Act.

This litigation concerned a dispute regarding an episode of *Family Guy* (a well-known, irreverent, animated comedic TV series), titled "When You Wish Upon a Weinstein" (the "Episode"), which was first distributed via DVD box set in September 2003, and was repeatedly telecast numerous times thereafter. In the Episode, the buffoonish patriarch of the cartoon family, Peter Griffin, sings a song ("The Family Guy Song"), set to music meant to evoke and parody the song "When You Wish Upon a Star" from the Walt Disney film *Pinocchio*, and accompanied by visual elements echoing an equivalent scene in *Pinocchio*. Plaintiff did not file its complaint in this action, which alleged that the Family Guy Song infringed its copyright in "When You Wish Upon a Star," until over four years after the Episode was first distributed.

On March 16, 2009, the Court issued its Memorandum and Order ("Mem. and Order"), ruling that the Family Guy Song constitutes parody-fair use protected under § 107 of the

---

[1] Pursuant to contractual agreements, the Fox-entity Defendants listed above were required to indemnify the other defendants in this action, and paid all of the attorneys' fees and costs incurred herein. (Zavin Decl. ¶ 2).

Copyright Act, granting Defendants' summary judgment motion in its entirety, and denying Plaintiff's cross-motion for summary judgment. In its ruling, the Court held that, as a matter of law, the Family Guy Song is properly understood as a "parody" of "When You Wish Upon a Star," noting, among other things, that the "creators of the episode were clearly attempting to comment in some way on the wishful, hopeful scene in *Pinocchio* with which the song is associated." And after considering the statutory fair use analysis as a whole, and relying on well-settled law, the Court concluded that "there can be no question that Defendants' use of 'When You Wish Upon a Star' constitutes fair use."

As set forth herein, Plaintiff's arguments to the contrary were objectively unreasonable and contrary to well-settled Supreme Court and Second Circuit precedent. Particularly unreasonable were Plaintiff's arguments concerning the critical, "market harm" factor in the fair use analysis. Plaintiff did not even attempt to present evidence, as it was required to, that the Family Guy Song usurped the market for "When You Wish Upon a Star," but instead relied on spurious arguments and circular reasoning that not only have been rejected by other courts in this Circuit, but actually have already been deemed to be objectively unreasonable and grounds for granting attorneys' fees.

An award of fees against Plaintiff is fully supported by the policies behind the fee-shifting provisions of the Copyright Act of encouraging defendants to litigate meritorious defenses, including the fair use defense, in support of their creative works, and to deter plaintiffs from pursuing unreasonable claims that would negatively impact the creation of new creative works. No television show, no matter how successful – and particularly a television show that creates new parodic work every week – could continue if it regularly faced legal fees of this magnitude. Further, as discussed hereinafter, Plaintiff is fully capable of paying these fees.

Under the circumstances of this case, Defendants should not have had to incur a half a million dollar expense defending a clearly protected and transformative parodic work, and should be compensated for being forced to defend against this meritless action.

**ARGUMENT**

I. **Defendants Are Entitled to Recover Their Reasonable Attorneys' Fees and Costs For Defending Against Plaintiff's Objectively Unreasonable Copyright Claim**

The Copyright Act provides that a court may, in its discretion, award the prevailing party in an infringement action its costs, including reasonable attorneys' fees. 17 U.S.C. § 505.

Under the "evenhanded" approach the Supreme Court adopted in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994), courts must apply the same standard to prevailing plaintiffs and prevailing defendants in determining whether to award fees under § 505. The *Fogerty* Court recognized that such an approach is necessary to fulfill the Copyright Act's primary objective, "enriching the general public through access to creative works," *id.* at 527, as defendants as well as plaintiffs may hold copyrights, *id.* at 526, "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement," *id.* at 527, and "a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim . . . ." *Id.*

The *Fogerty* Court concluded that while there are no precise rules or formula for making the determination, attorneys' fees are to be awarded as a matter of the Court's discretion, which must be exercised in light of the underlying purposes of the Copyright Act. *Id.* at 534. A court may examine several non-exclusive factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence," so long as

these factors are faithful to the purposes of the Copyright Act. *Id.* at 534 n.19 (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)).

Of these factors, the Second Circuit has held that "objective reasonableness" should be accorded "substantial weight" in light of the emphasis on the purposes of the Copyright Act, *see, e.g., Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 121 (2d Cir. 2001), and courts in this District have frequently awarded prevailing defendants their fees and costs in copyright cases upon a showing solely of the objective unreasonableness (either factually or legally) of plaintiff's position – neither bad faith nor frivolousness need be found in order to award fees under § 505. *See, e.g., Hudson v. Universal Studios, Inc.*, 04 Civ. 6997, 2009 U.S. Dist. LEXIS 18729, at *3 (S.D.N.Y. Mar. 9, 2009); *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, 546 F. Supp. 2d 120, 126, 128 (S.D.N.Y. 2008); *Crown Awards, Inc. v. Discount Trophy & Co.*, 564 F. Supp. 2d 290, 294 (S.D.N.Y. 2008); *Vargas v. Transeau*, 04 Civ. 9772, 2008 U.S. Dist. LEXIS 59344, at *6 (S.D.N.Y. Aug. 6, 2008); *Chivalry Film Prods. v. NBC Universal, Inc.*, 05 Civ. 5627, 2007 U.S. Dist. LEXIS 86889, at *5 (S.D.N.Y. Nov. 27, 2007); *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006); *Video-Cinema Films, Inc. v. Cable News Network, Inc.*, 98 Civ. 7128, 2003 U.S. Dist. LEXIS 4887, at *4 (S.D.N.Y. Mar. 31, 2003); *Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 666-67 (S.D.N.Y. 2001); *Screenlife Establishment v. Tower Video, Inc.*, 868 F. Supp. 47, 52 (S.D.N.Y. 1994); *Williams v. Crichton*, 891 F. Supp. 120, 121 (S.D.N.Y. 1994).

Here, Defendants are entitled to recover their attorneys' fees and costs for defending against Plaintiffs' copyright claim because, as the Court held, "there can be no question that Defendants' use of 'When You Wish Upon a Star' constitutes fair use," (Mem. and Order at 27), and Plaintiff's arguments to the contrary were objectively unreasonable. Importantly, the award

of attorneys' fees here would further the fundamental purposes of the Copyright Act, as "[f]rom the infancy of copyright protection" the concept of fair use "has been thought necessary to fulfill copyright's very purpose, 'to promote the Progress of Science and useful Arts . . . .'" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994) (quoting U.S. Const., Art. I, § 8, cl. 8). An award of attorneys' fees is necessary to compensate Defendants for the expenses incurred in defending this unreasonable litigation and deter others from bringing similar unreasonable claims, which frustrate the very purpose of the Copyright Act.

### A. Defendants' Are the Prevailing Party

As an initial matter, there can be no doubt that Defendants are the prevailing party, a necessary prerequisite for the award of attorneys' fees. The Court's March 16, 2009 Memorandum and Order granted Defendants' motion for summary judgment in its entirety, dismissing all claims against them and disposing of this case.

### B. Plaintiff's Assertion and Maintenance of Its Copyright Claim Was Directly Contrary to Well-Settled Law in the Context of the "Fair Use" Doctrine, and Was Objectively Unreasonable in Fact and Law

The phrase "[o]bjective unreasonableness is generally used to describe claims that have no legal or factual support." *Viva Video, Inc. v. Cabrera*, 9 Fed. Appx. 77, 80 (2d Cir. 2001); *see also Contractual Obligation*, 546 F. Supp. 2d at 125 ("A plaintiff's claim of copyright infringement is objectively unreasonable when the claim is clearly without merit or otherwise patently devoid of [a] legal or factual basis.") (quotation and citation omitted). Here, as set forth in more detail below, Defendants' are entitled to attorneys' fees because Plaintiff's assertion and maintenance of its copyright claim in the face of Defendants' clearly meritorious "fair use" defense, and Plaintiff's arguments in opposition to that defense, were objectively unreasonable.

5

## 1. **Defendants' Use of "When You Wish Upon a Star" Was Clear Parody**

First, Plaintiff's challenge to the essential parodic nature of the Family Guy Song was objectively unreasonable. As this Court held, based on well-settled precedent, the Family Guy Song is a parody because it creates a contrast with the original song's comment on the world, commenting both on the "original work's fantasy of stardust and magic" and the Family Guy character's prejudicial "fantasy" of Jewish financial "superiority." (Mem. and Order at 11-17) (citing, *inter alia*, *Campbell*, 510 U.S. 569; *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109 (2d Cir. 1998); *Abilene Music, Inc. v. Sony Music Entertainment, Inc.*, 320 F. Supp. 2d 84 (S.D.N.Y. 2003)). As the Court recognized, the parodic nature of the Family Guy Song is made clear by the visual elements on screen at the time the song is being sung in the episode, which echo an equivalent scene in the Disney film *Pinocchio* (the original context of the song "When You Wish Upon a Star") (Mem. and Order at 16). These visual elements made incontrovertibly plain that the creators of the Family Guy Song did not "simply substitute[] new lyrics for a known song 'to get attention or to avoid the drudgery in working up something fresh,'" (*id.*, quoting *Campbell*, 510 U.S. at 580), but rather were commenting on the "wishful, hopeful scene in *Pinocchio* with which the song is associated." (*Id.* at 17); *see also Abilene*, 320 F. Supp. 2d at 91 ("[T]his is not a case in which the author has taken the melody of a popular song purely for the sake of convenience, and then changed the lyrics to satirize a subject having nothing to do with the original song.").

Plaintiff's only response to the clear parodic character of the Family Guy Song (and the accompanying visual elements) was to argue that the Family Guy Song could not be a "parody" because it does not "ridicule," as opposed to comment on, "When You Wish Upon a Star." (Pl.

Mem. at 12-17).[2] Plaintiff's definition of parody was simply wrong, and lacked any legal basis. As explained in greater detail in Defendants' reply memorandum of law in support of their summary judgment motion, a work is a parody if, *inter alia*, it subjects an underlying work to "commentary or ridicule" (Def. Reply Mem. at 1-4).[3]

In similar circumstances, the United States District Court for the Central District of California granted attorneys' fees to a copyright defendant after finding for the defendant on its "fair use" defense, holding that "[t]he parodic character of Defendant's work was clear, especially in light of the dearth of legal authority Plaintiff proffered to support any argument to the contrary." *Mattel, Inc. v. Walking Mountain Prods.*, CV 99-8543, 2004 U.S. Dist. LEXIS 12469, at *4-5 (C.D. Cal. June 24, 2004). Here, the parodic nature of Defendants' song was eminently clear, particularly in the context in which it appeared in the Episode, and Plaintiff's arguments to the contrary – which were not supported by apposite legal authority – were objectively unreasonable. Accordingly, an award of Defendants' attorneys' fees is appropriate.[4]

### 2. Consideration of the "Fair Use" Factors Further Demonstrates the Objective Unreasonableness of Plaintiff's Claim

The fair use defense is codified in Section 107 of the Copyright Act, which sets forth four illustrative factors to be considered by the courts in determining whether a work constitutes a

---

[2] References to "Pl. Mem." are to Plaintiff's Combined Memorandum in Support of Its Motion for Summary Judgment on Liability and in Opposition to Defendants' Motion for Summary Judgment on Fair Use, dated May 23, 2008.

[3] References to "Def. Reply Mem." are to Defendants' Combined Reply Memorandum of Law in Further Support of Their Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment on Liability, dated June 4, 2008.

[4] The parodic nature of Defendants' work is further demonstrated by the fact that it serves to lampoon Walt Disney's purported anti-Semitism. (Mem. and Order at 17). Again, Plaintiff raised only objectively unreasonable responses to this point, denying that "When You Wish Upon a Star" is publicly associated with the Disney Company or Walt Disney personally, or even that the public associates Walt Disney with the Disney Company. (*Id.* at 18 (citing Pl. Mem. at 18)). Plaintiff also argued that Defendants failed to adduce evidence that the public "actually believes Mr. Disney was an anti-Semite," when all that was required was that he might be perceived to be an anti-Semite. (Mem. and Order at 18 (citing Pl. Mem. at 19)). Plaintiff's stubborn (indeed absurd) denial on these points was objectively unreasonable.

"fair use." These are: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used; and (4) the effect of the use upon the potential market for or value of the copyrighted work. *See* 17 U.S.C. § 107. Of these, the first and fourth factors were most important to Plaintiff's claim, but Plaintiff's arguments with regard to both of these factors lacked any legal or factual support.[5]

        a. <u>Defendants' Use of "When You Wish Upon a Star" Was Clearly Transformative, and Plaintiff's Contention to the Contrary Was Objectively Unreasonable</u>

The first "fair use" factor requires a court to consider whether "the new work merely 'supersedes the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message . . ., in other words, whether and to what extent the new work is 'transformative.'" *Campbell*, 510 U.S. at 579 (quotations and citation omitted). In its summary judgment ruling, this Court held that "[i]n the context of [the] case law, it is clear that the song 'I Need a Jew' is transformative of the original work," observing that the lyrics of the Family Guy Song are almost entirely different from those of "When You Wish Upon a Star," the tone and message of the two songs are strikingly different, the tune is somewhat different, and the cartoons in which they appear could not be more different. (Mem. and Order at 22-23).

Unable to deny the transformative nature of Defendants' work, Plaintiff instead tried to change the subject. In a section of its brief appearing under the heading "I Need a Jew is not otherwise transformative," Plaintiff argued that the Family Guy Song is a satire and attempted to

---

[5] As the Court held, the second factor is essentially irrelevant where the claimed "fair use" is a parody. (Mem. and Order at 23). Similarly, even assuming that Defendant used substantially all of "When You Wish Upon a Star" (which was not the case), the Court found that the third factor weighed in Defendants' favor because such borrowing was "necessary to allow the parodic character of the[] work to come through." (*Id.* at 24-25).

distinguish the Second Circuit's decision in *Blanch*, 467 F.3d 244 (2d Cir. 2006), but did not even attempt to address the transformative nature of the work or its marked differences from "When You Wish Upon a Star." (Pl. Mem. at 21-22). Plaintiff then asserted that "[e]ven if there were some minor parodic or transformative component to 'I Need a Jew,' the dominant purpose is satiric and non-transformative," but even that section of Plaintiff's brief did not address the significant differences between the works, and instead repeated Plaintiff's (meritless) argument that the Family Guy Song is not a "parody" because it does not "ridicule" "When You Wish Upon a Star." (Pl. Mem. at 23).

In any event, Plaintiff's efforts to brand the Family Guy Song a "satire," rather than a parody, would never have made any difference, because, as the Second Circuit held in *Blanch v. Koons*, 467 F.3d 244, satire is also protected by fair use. *Id.* at 255 (Defendant's "use of a slick fashion photograph enables him to satirize life as it appears when seen through the prism of slick fashion photography."). In light of the unquestionably transformative nature of the Family Guy Song, and the equally unquestionable lack of any market harm (*see infra* at 10-13), even if Plaintiff could have somehow succeeded in convincing the Court that the Family Guy Song was not a "parody," it never had any reasonable shot at overcoming Defendants' fair use defense. *See Campbell*, 510 U.S. at 580-81 ("[W]hen there is little or no risk of market substitution, whether because of the large extent of transformation of the earlier work . . . or other factors, taking parodic aim at an original is a less critical factor in the analysis . . . ."). Accordingly, the incontrovertible, and uncontroverted, transformative nature of Defendants' work further demonstrates the objective unreasonableness of Plaintiff's claim.

      b.      Plaintiff's Allegations of "Market Harm" Rely on a Complete, and Legally Untenable, Misconception of the Fourth Factor Analysis

The Supreme Court in *Campbell* made clear that the *only* harm that is cognizable under the fourth "fair use" factor is the harm of "market substitution" for the original works or derivative works. *Campbell*, 510 U.S. at 590-93. And as this Court recognized in its summary judgment ruling, the Second Circuit recently confirmed that:

> In considering the fourth factor, our concern is not whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use usurps the market of the original work. The market for potential derivative uses includes only those that creators of original works would in general develop or license others to develop.

(Mem. and Order at 25) (quoting *Blanch*, 467 F.3d at 258).

During discovery in this action, Plaintiff and its experts all admitted that Plaintiff had <u>no</u> evidence that the Family Guy Song caused any market harm, and that the Family Guy Song could <u>not</u> serve as a substitute in the market for "When You Wish Upon a Star." (*See* Zavin Decl. Ex. B at 25-30, 60; Ex. C at 18-19; Ex. D at 89-90).[6] This admitted lack of market harm was particularly striking, given that the Family Guy episode in question had been repeatedly telecast and distributed on DVD for over four years at the time the Complaint was filed.[7] The reason for this lack of market harm is simple – because the Family Guy Song is truly a transformative work, there was never any possibility of market substitution.

Accordingly, this Court ruled that "<u>there can be no question</u> that 'I Need a Jew' does not usurp the market for 'When You Wish Upon a Star.'" (Mem. and Order at 26) (emphasis

---

[6] References to "Zavin Decl. Ex. ___" are to the Exhibits to the accompanying Declaration of Jonathan Zavin.

[7] The fact that Plaintiff claims it did not even learn of the existence of the Family Guy Song until approximately three and a half years after the song's initial distribution, when one of Plaintiff's employees viewed the Family Guy Song on YouTube (Zavin Decl. Ex. B, at 19), belied any claim by Plaintiff of effect on the market.

added). Moreover, the Court observed that Plaintiff did "not even make the contention that 'I Need a Jew' could in any way substitute for 'When You Wish Upon a Star.'" (*Id.*). Plaintiff's insistence on litigating this claim, despite its complete inability to argue that the requisite risk of market substitution existed, is compelling grounds for an award of attorneys' fees.

Instead of arguing that the risk of market substitution existed, which it was unable to do, Plaintiff argued that (1) the "offensive" nature of the Family Guy Song could somehow cause potential licensees not to license "When You Wish Upon a Star," and (2) Plaintiff could potentially be deprived of licensing revenue, including licensing revenue for satiric or comedic uses of "When You Wish Upon a Star," if uses similar to the Family Guy Song were permitted. (Pl. Mem. at 30-32). Both of these arguments are patently without legal merit, and, as this Court held, "rely on a misconception of the fourth factor analysis." (Mem. and Order at 25).

First, Plaintiff's argument that the "offensive" nature of the Family Guy Song somehow harms the value of "When You Wish Upon a Star" has been directly rejected by the Supreme Court and the Second Circuit, both of which hold that harm claimed because a parody has exposed the original work to derision, or other "reputational" harm for being associated with a controversial or offensive work, are irrelevant under the market harm analysis. *See Campbell*, 510 U.S. at 593 ("The fact that a parody may impair the market for derivative uses by the very effectiveness of its critical commentary is no more relevant under copyright than the like threat to the original market. . . ."); *Leibovitz*, 137 F.3d at 117 n. 7 ("But like market harm caused by a negative book review . . . any lost revenue Leibovitz might experience due to celebrities' reluctance to be photographed for fear of enduring parodies is not cognizable harm under the fourth fair use factor."). Further, in *Blanch* the Second Circuit plainly held that "[i]n considering the fourth [fair use] factor, <u>our concern is not whether the secondary use suppresses or even</u>

11

destroys the market for the original work or its potential derivatives, but whether the secondary use usurps the market of the original work." 467 F.3d at 258 (emphasis added). In light of this clear precedent, Plaintiff's argument that its song is harmed by association with the Family Guy Song, even absent any evidence of market usurpation, was clearly insufficient, and Plaintiff's reliance on this argument was objectively unreasonable.

Second, as the Court held in its summary judgment ruling, Plaintiff's argument based on potential lost licensing revenues "would swallow the rule entirely," as "[a]ll uses of copyrighted work under a fair use rationale deprive the owner of licensing fees," and "[i]f a parody of the original work would usurp the market for licensing other comedic uses of the original work, then all parodies would fail under this prong of the analysis." (Mem. and Order at 26). In case there were any doubt as to the objective unreasonableness of this argument, Courts within this Circuit have already deemed identical arguments "objectively unreasonable," "spurious" and "circular" in deciding to award fees to copyright defendants prevailing on a "fair use" defense.

For example, in *Video-Cinema Films*, 2003 U.S. Dist. LEXIS 4887, the Court awarded attorneys' fees to the prevailing defendant in a case where the plaintiff conceded that defendants' use of clips from plaintiff's copyrighted films "did not compete with or supersede the market for the entire film," but instead argued that defendants' use of the film footage deprived plaintiff of a market for licensing film clips. *Id.* at *11-12, 16. In determining that the plaintiff's position was objectively unreasonable, the *Video-Cinema* Court held that "Plaintiff's argument, if carried to its logical conclusion, would eviscerate the affirmative defense of fair use since every copyright infringer seeking the protection of the fair use doctrine could have potentially sought a license from the owner of the infringed work." *Id.* at *11-12 (quoting *Hofheinz v. AMC Prods., Inc.*, 147 F. Supp. 2d 127, 140 (E.D.N.Y. 2001)).

Similarly, in *Hofheinz v. AMC Prods., Inc.*, CV-00-5827, 2003 U.S. Dist. LEXIS 16940 (E.D.N.Y. Sep. 3, 2003), the plaintiff objected to the use, in a documentary, of film clips of her copyrighted motion pictures, arguing, *inter alia*, that the existence of a market for film clips supported her claim that the documentary harmed the market for her copyrighted works. *Id.* at *19. The Court rejected this reasoning as "objectively unreasonable," "circular" and "spurious," *id.*, and awarded defendants with attorneys fees for prevailing on their "fair use" claim. *Id.* at *20-21.

Here, Plaintiff did not even argue that the requisite risk of market substitution exists, and instead relied on discredited theories that are directly contrary to controlling authority and, in fact, have expressly been deemed "objectively unreasonable" by other courts. That Plaintiff's positions with respect to the fourth "fair use" factor were objectively unreasonable is beyond serious dispute.[8]

### C. Considerations of Compensation and Deterrence Favor an Award of Attorneys' Fees Here

Considerations of compensation and deterrence further support the award of attorneys' fees to the prevailing Defendants.

The *Hofheinz* Court concisely encapsulated the reasons for granting attorneys' fees to defendants prevailing, against objectively unreasonable claims, on a "fair use" defense:

> This is not a close case, and since encouraging copyright holders to litigate claims of this sort would negatively impact the creation of new works of commentary and criticism, such claims are appropriately deterred by assessment of attorneys fees. Conversely, encouraging the creators of works of commentary and criticism to litigate the fair use defense in cases

---

[8] In addition to being legally untenable, Plaintiff's theories of "market harm" lacked any factual support. Plaintiff's 30(b)(6) witness conceded during his deposition that Plaintiff had no evidence that (i) the Family Guy song had harmed the market for "When You Wish Upon a Star," (ii) that anyone refused to license "When You Wish Upon a Star" because of the existence of the Family Guy Song, or (iii) the popularity of, or licensing requests for, "When You Wish Upon a Star" had declined since the Family Guy Song came out. (Zavin Decl. Ex. B, at 22-23, 32-35, 38-40).

> of this sort by compensating them for their legal expenses will enrich the public by increasing the supply and improving the content of commentary and criticism.

*Hofheinz*, 2003 U.S. Dist. LEXIS 16940, at *20; *see also, e.g., Rodriguez v. Klum*, 05-CV-10218, 2009 U.S. Dist. LEXIS 8148, at *5 (S.D.N.Y. Jan. 8, 2009) (fee award necessary to deter copyright holders from bringing unreasonable actions without fear of any consequences); *Mallery v. NBC Universal, Inc.*, 07 Civ. 2250, 2008 U.S. Dist. LEXIS 20893, at *5 (S.D.N.Y. Mar. 18, 2008) (same); *Chivalry*, 2007 U.S. Dist. LEXIS 86899, at *8-9 (same); *Earth Flag*, 154 F. Supp. 2d at 668 (same).

Here, the defense of this case served the goal of copyright, enriching the public through creative works (*see supra* at 3), by securing the public's access to a whole new creative work, with a dramatically different, humorous and insightful message than the innocent, idyllic original from a bygone era that it evokes and contrasts. Plaintiff's litigation of its copyright claims did not serve the goal of copyright, but rather sought, through objectively unreasonable arguments, to restrain the public's access to new creative works, in a way that, if successful, would have negatively impacted the creation of new works of parody. "Under the circumstances of this case, and to advance considerations of compensation and deterrence, defendants must be compensated for being forced to defend against such a baseless action." *Earth Flag Ltd.*, 154 F. Supp. 2d at 668 (citations and quotations omitted).

### D. The Relative Financial Positions of the Parties Does Not Militate Against A Fee Award

Finally, Plaintiff should not be heard to argue that any financial disparity between the parties somehow weighs against a fee award to Defendants. To the contrary, Plaintiff itself has alleged that it "is one of the world's largest international music publishing companies." *See*

Compl. ¶ 11. To the extent the losing party's financial position is relevant, this factor weighs in favor of an award of attorneys' fees here.[9]

## II. The Amount of the Requested Award of Attorneys' Fees and Costs is Reasonable

By this motion, Defendants respectfully request a determination of Plaintiff's liability for Defendants' reasonable attorneys' fees and costs incurred in defending this action. Upon the Court's order determining that Defendants are entitled to recovery of their fees from Plaintiff, Defendants will submit all necessary documentation further supporting the reasonableness of the amount of attorneys' fees to which they are entitled. Such a bifurcated determination is provided for under Fed. R. Civ. P. 54(d)(2)(C) ("The court may determine issues of liability for fees before receiving submissions bearing on issues of evaluation of services for which liability is imposed by the court.").

Per Fed. R. Civ. P. 54(d)(2)(B), the amount sought in fees and costs in this matter is set forth in the accompanying declaration of Jonathan Zavin (the "Zavin Decl."), counsel for Defendants. Through March 16, 2009, Defendants incurred $488,948.46 in attorneys' fees and $3,704.05 in taxable costs in defending this action. Zavin Dec. ¶¶ 5-6. The total number of hours is reasonable, and the hourly rates are commensurate with those charged by comparable firms. Zavin Dec. ¶ 8-9.[10]

---

[9] In any event, several courts in this Circuit have awarded attorneys' fees pursuant to § 505 even against *pro se* plaintiffs where "the defendant prevails and the plaintiff's copyright claim was objectively unreasonable, without taking into account the financial disparities between the parties." *Chivalry*, 2007 U.S. Dist. LEXIS 86889, at *9-10; *see also Attia v. Soc'y of the N.Y. Hosp.*, 12 Fed. Appx. 78, 79-80 (2d Cir. 2001) (affirming an award of costs and fees against a *pro se* copyright plaintiff); *Polsby v. St. Martin's Press*, No. 97 Civ. 690, 2000 U.S. Dist. LEXIS 596, at *5-6 (S.D.N.Y. Jan. 18, 2000). "This is because [t]he decision to award attorney's fees is based on whether imposition of the fees will further the goals of the Copyright Act, not on whether the losing party can afford to pay the fees." *Chivalry*, 2007 U.S. Dist. LEXIS 86889, at *10 (quoting *Harrison Music Corp. v. Tesfaye*, 293 F. Supp. 2d 80, 85 (D.D.C. 2003)).

[10] Plaintiff unnecessarily increased the costs of this litigation by taking ten (10) depositions in a straightforward case. Plaintiff also served extensive document requests on the Cartoon Network and

# CONCLUSION

For the foregoing reasons, Defendants respectfully submit that they are entitled to recover the attorneys' fees and costs they incurred in defending against this action brought under the Copyright Act.

Dated: New York, New York
       March 30, 2009

>                    LOEB & LOEB LLP
>
>                    By:/s/ Jonathan Zavin
>                       Jonathan Zavin (JZ-1846)
>                       Jonathan Neil Strauss (JS-1090)
>                       Shelly Elimelekh (SE-0597)
>                       345 Park Avenue
>                       New York, New York 10154-1895
>                       (212) 407-4000
>
>                       Attorneys for Defendants

---

deposed two of their executives in Atlanta, despite the fact that the Cartoon Network was merely a distributor of the *Family Guy* program and had nothing to do with the creation of the Episode, or the Family Guy Song, in issue. (Zavin Decl. ¶ 7).